ABNER EASON *et al.,* Plaintiffs in Error, *v.* DANIEL CHAPMAN, Defendant in Error.

### ERROR TO FRANKLIN.

Where it is shown that the general character of a witness, among his neighbors, for truthfulness, is bad, it is erroneous to refuse to let the impeaching witness answer whether he would believe such witness upon oath.

The case of *Fry* v. *Bank of Illinois,* in 11th Illinois Reports, page 367, on this question, approved.

THIS was an action of trespass, brought by Chapman against Eason and others, in the Williamson Circuit Court, for the supposed killing of a stable horse. The defendants below pleaded the general issue. There was a trial before PARRISH, Judge, and a jury, at September term, 1857, of the Franklin Circuit Court, on a change of venue from Williamson, which resulted in a verdict and judgment for plaintiff below, of five hundred dollars.

In the progress of the trial, one *Charles Starix* was introduced as a witness, by the defendants, who stated that he knew Caroline Riddle, (a witness who had been sworn on the part of the plaintiff,) and had known her for five years, and that he was acquainted with her general character for truthfulness in the neighborhood in which she lived when witness knew her ; and that her general character for truthfulness is bad. The witness was then asked if, from knowledge of her general character for truthfulness, he would believe her upon oath ; to this question the plaintiff objected and the objection was sustained by the court, and the witness was not allowed to answer. On being cross-examined, Starix stated that Caroline Riddle was about twelve years old when he first knew her, and that he speaks of her character at that age ; that she is now nineteen or twenty ; that he heard the widow Bain, one of the Packers, and many other neighbors, say, but could not tell who, that she was a lying girl, and that her character for truthfulness was bad ; he had always heard her badly spoken of, and thinks he heard most of the neighbors say her character for truthfulness was bad.

J. LOGAN, R. S. NELSON and A. D. DUFF, for Plaintiffs in Error.

J. ALLEN, for Defendant in Error.

CATON, C. J.   In order to impeach the plaintiff's witnesses, the defendants called witnesses who stated that they were acquainted with the characters of the plaintiff's witnesses for truthfulness in the neighborhood in which they lived, and that such characters were bad. The defendants' counsel then asked the witnesses if, from their knowledge of such general character for truthfulness, they would believe them upon oath. This question was objected to and the objection sustained by the court, to which an exception was taken, and this ruling is now assigned for error.

It is a general rule, no doubt, that the testimony of witnesses shall be confined to a simple statement of facts, and that they shall not be allowed to give their opinions or conclusions de-

Eason et al. *v.* Chapman.

duced from those facts, but that such conclusions shall be deduced by the jury. To this general rule there are, however, many exceptions which are as well known and universally recognized as the rule itself. Nearly, if not quite all, these exceptions are based upon the supposition that in the particular instance the witness is presumed, from his particular position, calling or experience, to be capable of forming a more enlightened opinion than the jury. The most usual example is where the opinions of experts in trades, sciences or professions, are admitted to enlighten the jury, who are presumed to be less informed than the witness, on the particular subject; or where, from the nature of the case, it is supposed to be impossible from any mere statement of facts to convey to the jury the same impressions which those facts, as they actually transpired, were calculated to make or did make upon the minds and understandings of the witnesses. Instances of this kind are met with where slanderous words are alleged to have been spoken, and it is alleged that they were designed to convey and did convey a different meaning to the minds of the hearers than that which would be understood by their simple import, and witnesses have been allowed to state what meaning was conveyed to them by the words used, taken in connection with the circumstances and manner of speaking.

So in the case before us. It does not follow as a necessary consequence that because the reputation of a witness for truth and veracity in the neighborhood in which he lives may be bad, that he is not to be believed when upon his oath. When such reputation has been proved, no party can rest assured that the veracity of the witness has been utterly destroyed with the jury. We all know that there are persons so given to apochryphal statements in their common conversation and intercourse with their friends and neighbors, that no one places any confidence in their statements, and this want of truthfulness becomes a subject of common remark among all who know them, still, from their daily walk and conversation in other respects, none would doubt their truthfulness when solemnly called to testify in a court of justice. And yet it would be impossible to detail all the minutiæ of the circumstances which would inspire that confidence, so as to impart their full and just impression to the jury. These well known facts are presumed to be ever present to the mind of the jury, so as to a greater or less extent, weaken the force of every impeachment. Hence witnesses who must be always impressed with these indescribable circumstances, if they exist, have always been allowed to express the opinion, whether they would, or not, believe the impeached witness under oath. Who is there who does not know that two witnesses may be

impeached in precisely the same language, and truthfully, and yet one would be implicitly believed by all who know him, when under oath, while no form of oath, however solemn, would inspire the acquaintances of the other with the least confidence in his statements ?

There is then, a sound and substantial reason which addresses itself to men of observation and affairs, why this should be an exception to the general rule. Indeed it is strictly within the rule of the exception.

This principle and practice has been so long settled and so uniformly acted upon, both in England and this country, that we are a little surprised even in this progressive and innovating age, to find it lately questioned in some quarters; where the reason of the rule, it is feared, has not been properly considered. It is sufficient for us that we find it well settled as a part of the common law, and that as such it has been expressly recognized by this court. In the case of *Fry* v. *Bank of Illinois*, 11 Ill. R. 379, this court said—" The proper question to be put to a witness called to impeach another is, whether he knows the general reputation of the person sought to be impeached, among his neighbors, for truth and veracity. If this question is answered affirmatively, the witness may then be inquired of as to what that reputation is, and whether from that reputation he would believe him on oath." We are not now disposed to depart from this rule, which it is believed has been always acted upon in this State, without question, till now, and which received the emphatic sanction of this court nearly ten years ago. Even though we thought a different rule the best, we ought not to be ever vascillating in our decisions, so that no lawyer can know whether he is giving reliable advice to his client, although he may have read it from a solemn decision of this court.

The court erred in sustaining the objection to the question, and its judgment must be reversed and the cause remanded.

BREESE, J., dissenting. It is always with great diffidence that I dissent from an opinion of my associates, and I never do so, unless I conscientiously believe they rule erroneously on an important question, and this is such a case. The rule they seek to establish, is at variance, I think, with the first and fundamental principle of evidence, and though it may be the rule of the English courts, and of some courts in this country, it is not, and cannot be maintained to be, a rule founded in reason or justified by necessity.

The Chief Justice admits the general rule to be that the testimony of witnesses must be confined to a simple statement of facts, and they should not be allowed to give their opinions or

conclusions deduced from those facts, but that such conclusions should be drawn by the jury. This is undoubtedly the general rule, and but few exceptions to it are to be found in the books. The Chief Justice notices the most prominent, for example, the opinions of *experts* in certain trades, arts and sciences or professions. It is unquestionably true, on questions of science and trade, persons of skill are permitted to express an opinion on matters belonging to their particular science or art. They are not called to speak to facts, but to give opinions on facts sworn to by others. The books tell us why this is an exception to the general rule. 1 Greenleaf on Ev., secs. 280, 440. It is from necessity alone, and I think it may safely be affirmed that on this ground only, can a departure, from an otherwise universal principle of evidence, be justified. It is because of the peculiar science, art, trade or profession. Men not educated to them are not presumed to be informed in regard to them—they have no connection with them, and hence, from necessity, the opinions of the scientific are received.

To illustrate still farther the view taken by the court, instances in slander are referred to, where witnesses have been allowed to state the impressions made on their minds by the language used. This I apprehend is quite different, in principle, from the rule here laid down, and it proceeds on this ground: since words to be actionable in themselves must be such as in their plain and popular sense convey to the minds of the hearers a charge of some offense for which the plaintiff is amenable to the law, so the jury must be satisfied the defendant used the words in the sense imputed, and therefore may the defendant show under what circumstances the words were spoken, whether seriously, or in jest and merriment, and how they were received and understood by the hearers, so that the imputation of malice may be destroyed. It is right and just, and no rule is violated, by holding a party responsible for words in the sense in which he spoke them, and was understood to speak them. The very nature of the case admits this kind of testimony. But not so, when the character of a witness is attacked. He should stand or fall by the facts, not by opinions; neither to be prejudiced by an unfavorable opinion or aided by a favorable one. As in all other cases, so in this, the jury is entitled to the fact only, and that is his general character for truth, good or bad. On this fact, coupled with the bearing of the witness, his surroundings, and the circumstances proved, the jury can decide for themselves if he is worthy of belief, uninfluenced either way by the opinion of the impeaching witness. Having the fact, they are fully competent to make all proper deductions from it, and form a correct opinion, unbiased by improper influences.

Greenleaf, in his Treatise on Evidence—an acknowledged authority in this court—says, " The regular mode of examining into the general reputation, is to inquire of the witness whether he knows the general reputation of the person in question among his neighbors, and what that reputation is. In the English courts, the course is further to inquire, whether, from such knowledge, the witness would believe that person on oath. In the American courts the same course has been pursued, but its propriety has of late been questioned, and perhaps the weight of authority is now *against* permitting the witness to testify as to his own opinion." 1 Greenleaf Ev., sec. 461.

The authorities cited in support of the English rule are, 4 Wend. (N. Y.) 257; 2 Devereux, (S. C.) 209–211; 1 Hill (S. C.) 258; 7 Humphrey, (Tenn.) 92. Against the rule he cites 2 Sumner C. C. 610; Swift's Ev. 143; 1 Appleton, (19 Maine) 375; and two cases in Pennsylvania, which I do not understand as departing very materially from the English rule, and the rule as laid down by this court.

The case in 2 Sumner, 610, is *Goss* v. *Stinson,* and after citing the English rule, Story, Justice, says, " with us the more usual course is to discredit the party by an inquiry what his general reputation for truth is, whether it is good or whether it is bad."

I have not Gilbert or Peake on Evidence to refer to. Philips, in his Treatise, lays down the rule as this court has done, (2 Phil. Ev. 432,) and so does Starkie, (1 Stark. Ev. 211,) but neither assign any reason for the rule. The case in 19 Maine, 377, (*Philips* v. *Ringfield,*) was decided by Shepley, J., and his opinion so fully and clearly expresses mine that I shall use such portions of it as may be necessary. The court in that case prefer the rule as stated by Swift in his Treatise on Evidence. He was once Chief Justice of the Supreme Court of Connecticut, and considered one of the ablest jurists this country has produced. He says the only proper questions to be asked are, whether the witness knows the general character of the witness who is attacked, in point of truth, among his neighbors, and what the character is, whether good or bad, and states, that his testimony must be founded on the common repute as to *truth* and not as to honesty. Swift's Ev. 143. This is the fact which should be placed before the jury for their consideration in weighing the testimony. The opinions of a witness are not legal testimony except in special cases. To these cases I have referred in this opinion.

In other cases the witness is not to substitute his opinion for that of the jury; nor are they to rely upon any such opinion instead of exercising their own judgment, taking into consider-

ation the whole testimony.   When they have the testimony that the character of the witness is good or bad, they then have all the elements for the foundation of their judgment to which they are legally entitled.   Any other rule is a departure from sound principles and established rules of law respecting the kind of testimony to be admitted for the consideration of a jury, and their duties in deciding upon it.

And he might have added, there being no necessity for making this an exception, it cannot be regarded as an exception.

The court say further, " It moreover would permit the introduction and indulgence, in courts of justice, of personal and party hostilities, and of every unworthy motive by which man can be actuated to form the basis of an opinion, to be expressed to a jury to influence their decision."

I insist a witness is not to be crushed by the opinion of another, no matter how disreputable he may be.  He is to be judged by the facts, not by opinions.

Suppose the impeaching witness should state that the general character of the witness for truth, was good, and yet should give it as his opinion, that he ought not to be believed on oath. It is plain to be seen, such an opinion if expressed by a person of high standing and influence, and under the solemnities of an oath, might be overwhelming, and a man whose general character for truth is good, be sacrificed on the strength of a mere opinion.   His " daily walk and conversation " may be above reproach, but through the malice and pique of a man of influence, he is stigmatized before a jury, and a deserving suitor deprived of important testimony.

Such a rule does not comport, in my opinion, with the purposes of evidence, which are the ascertainment of facts, nor with justice, which should be always in view, and is wrong in principle.   It cherishes a defamatory spirit, encourages spite and malevolence, and should not be tolerated.

I cannot feel the force of the reasoning of the majority of the court by which the rule they have established is made an exception to the old fundamental and safe rule, that the witness must state facts, not give his opinions or impressions.   The rule however, having been recognized in 11 Ill. 379, some years before this case arose, I think with the majority, that the Circuit Court should have been governed by it in this case, and have conformed his opinion to it.   It would certainly have been more respectful, to say nothing of the obligatory force of the decisions of this court.   Yet notwithstanding, I think the Circuit Court announced the safest, and best, and most consistent rule, founded on correct principles, and it should prevail.   The rule in 11th

Ill. should not be adhered to, as it seems to have neither reason or necessity to justify it.

But again, should this error of the Circuit Court be considered sufficient to reverse this judgment?

I think we are all satisfied that substantial justice has been done in the case, by the finding of the jury. It could not very seriously affect the case whether the impeaching witness would or would not believe the person sought to be impeached. The jury had the facts before them on which to form their own conclusive opinion as to the credibility of the witness, and I think it is going too far to disturb a verdict where justice has been done, for any such like cause, and this court has so held repeatedly, in analogous cases. *Leigh* v. *Hodges*, 3 Scam. R. 17; *Smith* v. *Shultz*, 1 Scam. R. 491; *Gillett* v. *Sweat*, 1 Gilm. R. 475; *Newkirk* v. *Cone*, 18 Ill. R. 454.

In actions of trespass like this, where the testimony was, for the most part, circumstantial, the court should not disturb a verdict where there is any thing in the record going to support the finding of the jury, and no important rule of law violated. *Young* v. *Silkwood*, 11 Ill. R. 36. Even if proper testimony has been rejected by the court. *Greenup* v. *Stoker*, 3 Gilm. R. 202. I am therefore for affirming the judgment.

*Judgment reversed.*