Docket No. 94620–Agenda 8–September 2003.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES K. SANTOS, Appellee.

Opinion filed June 24, 20004.

JUSTICE FREEMAN delivered the opinion of the court:

A jury in the circuit court of Winnebago County convicted defendant James K. Santos of aggravated criminal sexual abuse (720 ILCS 5/12–16(d) (West 1998)) of T.K. The circuit court sentenced him to a four-year prison term. The appellate court reversed defendant’s conviction because of jury instruction error. The court also addressed an issue likely to recur on remand, and reversed the trial court’s ruling that certain evidence must be excluded pursuant to section 115–7 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115–7 (West 1998)), commonly known as the “rape shield” statute. 333 Ill. App. 3d 1. We granted the State leave to appeal. See 177 Ill. 2d R. 315(a). The State admits that defendant is entitled to a new trial because of the errors in the jury instructions; the State’s only argument before this court is that the appellate court erred in reversing the trial court’s application of the rape shield statute. We reverse the appellate court in part and remand for a new trial.

BACKGROUND

Defendant does not challenge the sufficiency of the evidence on appeal. Accordingly, we will summarize the evidence adduced at trial except where greater specificity is necessary to our resolution of the legal issues.

Many of the facts surrounding the charges against defendant are undisputed. In May 1999 T.K. was 16 years old. She and defendant met at a party at the home of Angie Enna and Herbert Reaves late on May 8 or in the early morning hours of May 9. At the time Enna and Reaves were 25 and 20 years old, respectively. T. K., who had been drinking since approximately 9 p.m. on May 8, was already somewhat inebriated when she arrived at the party that night. When defendant subsequently arrived, there was no alcohol at the party, and T.K. was among the people who went with defendant to purchase more. Defendant purchased T.K. a beer at her request. After returning the other persons to the party, defendant and T.K. left again in defendant’s car.

Defendant and T.K. testified to different versions of the subsequent events at trial. Both agreed that after riding around for several hours, defendant parked the car in a remote area where the two engaged in sexual intercourse. T.K. testified that she told defendant that she was 16 years old before the two engaged in any sexual activities. She also testified that all sexual contact between her and defendant occurred without her consent and against her will. Defendant, by contrast, testified that T.K. made advances upon him and told him she was 18 years old, only revealing that she was 16 years of age when the two were already engaged in sexual intercourse. He testified that when she informed him of this fact, he immediately ceased all sexual activities with her.

The State charged defendant with criminal sexual assault (720 ILCS 5/12–13(a) (West 1998)) and two counts of aggravated criminal sexual abuse (720 ILCS 5/12–16(c)(1)(ii), (d) (West 1998)). The first count of aggravated criminal sexual abuse alleged that defendant had committed an act of sexual conduct with T.K. by the use of force or threat of force. 720 ILCS 5/12–16(c)(1)(ii) (West 1998). The second count alleged that defendant had committed an act of sexual penetration with T.K., at a time when T.K. was between the ages of 13 and 17 and defendant was at least 5 years older than she. 720 ILCS 5/ 12–16(d) (West 1998). The jury acquitted defendant of the charge of criminal sexual assault and the charge of aggravated criminal sexual abuse involving an act of sexual conduct, but convicted defendant on the charge of criminal sexual abuse involving an act of sexual penetration. The circuit court sentenced defendant to four years’ imprisonment.

The appellate court reversed defendant’s conviction and remanded for a new trial. The appellate court held that the circuit court committed reversible error in its issues instruction to the jury. The court determined that there was sufficient evidence adduced at trial to support the defense theory that defendant had reasonably believed that T.K. was over 16 years of age. Accordingly, the appellate court held, the circuit court was required to instruct the jury that the State had the burden of proving beyond a reasonable doubt that defendant did not reasonably believe the victim to be of age. The failure to properly instruct the jury on the State’s burden of proof constituted reversible error, entitling defendant to a new trial. 333 Ill. App. 3d at 8.

The appellate court also elected to address an additional issue because it was likely to recur on remand. Before trial, defendant filed a motion 
in limine
 requesting the court’s permission to cross-examine T.K. regarding inconsistent statements she had made to the authorities. Specifically, on May 9, T.K. told medical personnel who were collecting rape kit samples that she had not engaged in sexual intercourse with anyone other than the defendant in the previous 72 hours. However, in August 1999, when DNA testing revealed that defendant could not have been the source of semen recovered from the victim, T.K. admitted to the police that she had in fact engaged in sexual intercourse with someone else on May 9. The State objected to the introduction of this evidence, contending it was barred under the rape shield statute. The trial court ruled in the State’s favor and excluded the evidence from consideration.

The appellate court held that the circuit court erred in excluding the evidence. 333 Ill. App. 3d at 9. The appellate court noted that the rape shield statute contains an exception, permitting the introduction of evidence the statute would otherwise bar where admission of such evidence is “constitutionally required.” Relying on its earlier decision in 
People v. Grano
, the appellate court held that the circuit court should have allowed defendant to inquire regarding T.K.’s statements, because “T.K.’s credibility was at issue.” 333 Ill. App. 3d at 9. The court remanded for a new trial, and directed the circuit court to permit defendant to cross-examine T.K. with her inconsistent statements.

In partial dissent, Justice O’Malley disagreed with the majority regarding the evidence the circuit court had excluded under the rape shield statute. See 333 Ill. App. 3d at 10-11 (O’Malley, J., concurring in part and dissenting in part). The dissenting justice argued that the appellate court majority erred in stating that 
Grano
 involved “prior inconsistent statement[s].” 333 Ill. App. 3d at 10 (O’Malley, J., concurring in part and dissenting in part). She also noted that, regardless, the 
instant 
case did not involve prior inconsistent statements, because the statements in question were inconsistent only with each other, not with any statement the victim had made during her in-court testimony. The dissenting justice concluded that the cross-examination was impermissible regardless of the rape shield, because inconsistent out-of-court statements were not a proper basis for impeaching a witness’ credibility. 333 Ill. App. 3d at 11 (O’Malley, J., concurring in part and dissenting in part).

ANALYSIS

The State concedes that the appellate court acted correctly in granting defendant a new trial based on the jury instructions. The State’s only argument before this court is that the appellate court erred in overruling the circuit court order barring defendant from cross-examining T.K. about her inconsistent statements regarding whether she had engaged in sexual activities with anyone else during the 72 hours preceding the assault. The State contends that the trial court acted correctly in excluding this evidence from the trial.

Evidentiary rulings are reviewed for abuse of discretion. 
People v. Caffey
, 205 Ill. 2d 52, 89 (2001). A trial court abuses its discretion only when its ruling is “ ‘ “arbitrary, fanciful or unreasonable” ’ or ‘ “where no reasonable man would take the view adopted by the trial court.” ’ ” 
People v. Donoho
, 204 Ill. 2d 159, 182 (2003), quoting 
People v. M.D.
, 101 Ill 2d 73, 90 (1984) (Simon, J., dissenting), quoting 
Peek v. United States
, 321 F.2d 934, 942 (9th Cir. 1963).

The rape shield statute provides in pertinent part as follows:

“In prosecutions for *** criminal sexual assault, [and] aggravated criminal sexual abuse, *** the prior sexual activity or the reputation of the alleged victim *** is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim *** with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim *** consented to the sexual conduct with respect to which the offense is alleged; or (2) when constitutionally required to be admitted.” 725 ILCS 5/115–7(a) (West 1998).

Thus the statute absolutely bars evidence of the alleged victim’s prior sexual activity or reputation, subject to two exceptions: (1) evidence of past sexual activities with the accused, offered as evidence of consent; and (2) where the admission of such evidence is constitutionally required.

The appellate court determined that the circuit court erred in excluding the evidence. The court relied exclusively on 
People v. Grano
, 286 Ill. App. 3d 278 (1996). The appellate court stated that in 
Grano
, the court had

“determined that the [rape shield] statute was not designed to preclude the admission of all evidence related to sex. Instead, the legislative intent of the rape shield statute is to exclude evidence of actual sexual history or reputation of the victim, not evidence offered for the purpose of impeachment, even when that evidence relates to sex.” 333 Ill. App. 3d at 9.

After discussing 
Grano
, the appellate court noted that the credibility of the alleged victim, T.K., was at issue in the instant case, and concluded that “the trial court misapplied the rape shield statute as a basis for excluding the evidence of T.K.’s inconsistent statements.” We find the appellate court to have erred.

Grano
 does not support the appellate court’s holding in this case. In 
Grano
, the appellate court reviewed a circuit court ruling that the rape shield statute precluded the defendant from introducing evidence that the complainant had previously falsely 
accused 
three other men of sexual assault. The court reasoned that the circuit court had erred in determining that the rape shield statute barred the introduction of this evidence because a verbal accusation was not “sexual activity.” 
Grano
, 286 Ill. App. 3d at 288. This finding meant that the rape shield statute had no bearing on the case at all, and thus the trial court had erred in excluding the evidence.

The same is not true of the instant case. Here, although as in 
Grano
 the evidence at issue does consist of statements by the complainant, those statements clearly reveal the complainant’s “prior sexual activity.” Accordingly, the rape shield does come into play. Contrary to the reasoning of the dissenting justice (see slip op. at 17-18 (McMorrow, C.J., dissenting)), and the appellate court majority, the statute makes no exception based on the purpose for which the evidence is offered. It is of no moment to the statute’s application that defendant sought to introduce the evidence for purposes of impeachment, rather than as an explicit attack on the victim’s character. The rape shield statute absolutely bars the introduction of the evidence, unless one of the two exceptions listed in the statute is applicable.

The first exception relates only to prior sexual activity between the victim and the accused, offered for purposes of establishing a defense of consent. This exception is inapplicable in the instant case, as the prior activity revealed by the evidence in question was not between complainant and defendant. 725 ILCS 5/115–7(a)(1) (West 1998).

The second exception permits introduction of evidence which the statute would otherwise operate to exclude, “when constitutionally required.” 725 ILCS 5/115–7(a)(2) (West 1998). The evidence in question in this case is two out-of-court statements which were inconsistent with each other, but not with any statement made by the witness on direct examination. We find that the constitution did not require that this evidence be admitted.

As the dissenting justice in the appellate court noted, what defendant wished to do by introducing this evidence was to impeach the victim’s credibility with a specific act of untruthfulness. He wished to show the jury that T.K. had lied on one occasion–when she told medical personnel she had not had sexual intercourse with anyone else in the previous 72 hours–in order to support his argument that when she testified in court she was lying about what had occurred between her and the defendant. Far from being constitutionally required, specific-act impeachment is 
prohibited
 in Illinois.
(footnote: 1) See, 
e.g.
, 
People v. West
, 158 Ill. 2d 155, 162 (1994) (upholding trial court ruling prohibiting cross-examination regarding specific instances of untruthfulness and rejecting contention that evidence of specific acts of untruthfulness may be brought out even in cases involving children who are too young to have developed a reputation); 
People v. Morrow
, 303 Ill. App. 3d 671, 680 (1999) (“Although the defendant’s credibility was an issue in this case, specific instances of untruthfulness are not admissible to attack a witness’s believability”); 
Podolsky & Associates L.P. v. Discipio
, 297 Ill. App. 3d 1014, 1026 (1998) (“In Illinois a witness’s credibility may not be impeached by inquiry into specific acts of misconduct which have not led to a criminal conviction”); 
People v. McGee
, 286 Ill. App. 3d 786, 796 (1997) (“specific instances of untruthfulness are not admissible to attack a witness’s believability”); M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §608.5, at 390 (8th ed. 2004) (“[t]he credibility of any witness, including a reputation witness, may not be attacked upon cross-examination by questioning the witness concerning specific instances of her misconduct not leading to a conviction”). Accordingly, it is clear that the second exception listed in the rape shield statute is inapplicable, and the evidence was correctly excluded.

Defendant argues that the impeachment in this case is more than ordinary mere-fact impeachment, however. He claims that it is especially important that the jury hear about T.K.’s untruthfulness because it occurred at the time she was reporting the crime. He argues that he is entitled to let the jury know that T.K. lied about something when she was reporting the crime, because her having done so casts doubt on everything else she said.

We reject this argument. Defendant’s argument is the same as that advanced in favor of any particular instance of untruthfulness–if the jury knew that the witness had lied on a previous occasion, the jury would be more likely to believe she was lying in her testimony regarding the facts at issue in the case. Such cross-examination is simply not permitted, because it is overly prejudicial in relation to its probative value. M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §608.5, at 390 (8th ed. 2004).

Defendant’s argument here is really a contention that he was not impeaching the witness on a 
collateral
 matter. But this contention is inaccurate. “A matter is collateral if it is not relevant to a material issue of the case.” 
Esser v. McIntyre
, 169 Ill. 2d 292, 304-05 (1996). “The test to be applied in determining if a matter is collateral is whether the matter could be introduced for any purpose other than to contradict.” 
People v. Collins
, 106 Ill. 2d 237, 269 (1985). Whether T.K had, unbeknownst to defendant, engaged in sexual relations with someone else is 
wholly
 unrelated to the question of whether defendant reasonably believed that T.K. was of age when the act of sexual penetration took place, which was the only controverted issue on this charge. The only reason defendant sought to inquire of T.K. about her statements to medical personnel was in order to contradict those statements with her later statements to law enforcement authorities. Thus it was, indeed, a collateral matter. This distinguishes the authority on which defendant relies wherein our appellate court has found the constitution required a defendant to be permitted to offer certain evidence which was 
directly
 relevant to matters at issue in the case, notwithstanding that it concerned the victim’s prior sexual activity. See 
People v. Anthony W.
, 324 Ill. App. 3d 181, 186-87 (2001) (evidence that complainant had sex a month before alleged assault would explain physical evidence of cleft hymen); 
People v. Mason
, 219 Ill. App. 3d 76, 78-79 (1991) (child victim’s viewing of adult videotapes admissible to explain her sexual knowledge, which had been submitted as evidence of abuse).

The dissent characterizes the victim as having lied about a “critical fact” (slip op. at 22) at the time she “reported” (slip op. at 12, 22, 23, 24, 26, 27) the crime to the “authorities” (slip op. at 23, 24). We note for purposes of clarification that the victim lied to an emergency room nurse about having had sexual relations with her boyfriend. There is no indication that the victim herself ever repeated this lie to the police, or indeed ever directly lied to the police. Rather, the evidence is that once the police inquired of the victim, she immediately admitted to them the truth. This weakens considerably the dissent’s inference that because the victim told this lie she might also have lied to the police about having told defendant she was 16. Slip op. at 26. Moreover, the fact that the victim told the police that she had told defendant she was 16 before they engaged in sexual activity was not referred to at trial and is thus irrelevant. Thus the victim’s “state of mind” at the time she first reported the crime is also irrelevant. What matters is whether the victim told the truth in her 
in-court
 testimony, and referring to prior bad acts in order to raise the inference that a witness is lying at trial is prohibited under Illinois law.

The dissent’s characterization that the victim lied about a fact “critical” to DNA analysis (slip op. at 23-24) is also difficult to accept. Nothing in the record establishes that the victim’s answer to this question was critical to the analysis; to the contrary, the analysis discerned that defendant’s genetic markers were not present in the materials recovered from the victim notwithstanding the victim’s untruth.

This court has specifically held that precluding a defendant in a sexual assault trial from impeaching a complaining witness on a collateral matter does not contravene the constitution. In 
People v. Sandoval
, 135 Ill. 2d 159, 181 (1990), the defendant admitted he had anal sexual intercourse with the complaining witness, as alleged, but claimed the encounter was consensual. During the victim’s direct examination, she testified that she had never had anal sex with anyone other than the defendant. The trial court ruled that the rape shield statute precluded the defendant from cross-examining the victim regarding the veracity of this statement. This court affirmed.

We acknowledged the defendant’s argument that the case “boil[ed] down to the jury’s determination of the credibility of the parties and he was denied the opportunity to confront the witness with what he allege[d] was a lie.” 
Sandoval
, 135 Ill. 2d at 180. Nevertheless, we found that the allegedly untrue statement the victim had made was collateral to the only controverted issue in the case–consent on the occasion in question–and thus there was no constitutional violation in denying defendant the opportunity to attempt the impeachment. 
Sandoval
, 135 Ill. 2d at 181 (“Even if this court were to assume that the complainant was not truthful when she testified that she had not had anal sex with others, we would not be required to reverse the verdict of the jury based on a denial of defendant’s right of confrontation. Impeachment of a witness is restricted to relevant matters; a witness may not be impeached on collateral or irrelevant matters”). Here, as in 
Sandoval,
 the defendant seeks to impugn his accuser’s credibility by showing that she lied regarding a matter collateral to the controverted issues in the case. Here, as in 
Sandoval
, we conclude that the constitution did not require that the defendant be permitted to attempt the impeachment in question. We note that the situation is even less favorable for defendant than it was for defendant 
Sandoval
, because in that case the false statement was made before the jury, whereas here the false statement was made outside of court.
(footnote: 2) We find no constitutional necessity for the impeachment.

We note finally that the dissent contends that the court’s ruling on the motion 
in limine
 under review precluded defendant from informing the jury that no semen matching his genetic profile had been recovered from the victim. Slip op. at 24. This is inaccurate. Although the circuit court did preclude defense counsel from so informing the jury, this was clearly a separate and independent ruling from the court’s ruling that defendant could not cross-examine the victim with her inconsistent out-of-court statements. We note that the motion 
in limine
 referred only to cross-examination; the other matter was raised separately during oral argument on the motion. Although both rulings required the circuit court to interpret and apply the rape shield, we see no logical or legal reason that the two rulings must either both be upheld or both reversed. Our holding is limited to the question before us: whether the circuit court was correct in precluding defendant from cross-examining the victim regarding her collateral out-of-court statements concerning her sexual history. Our opinion is not an endorsement of any other pretrial ruling by the circuit court, including specifically the court’s separate ruling barring defendant from informing the jury that no seminal material matching his genetic profile was recovered from the victim. That ruling is not before us on this appeal, the propriety of that ruling was not briefed by the parties before this court nor before the appellate court, and we accordingly express no opinion thereon.

CONCLUSION

The evidence in question revealed the victim’s “prior sexual activity.” Accordingly, the rape shield statute rendered it inadmissible. 725 ILCS 5/115–7(a) (West 1998). Neither of the two exceptions listed in the rape shield statute apply. Accordingly, the circuit court ruling prohibiting defendant from introducing the evidence in question was correct. We reverse that portion of the appellate court opinion which reversed this ruling, and remand for a new trial.

The judgment of the appellate court is affirmed in part and reversed in part, the judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded to the circuit court.

Appellate court judgment affirmed

in part and reversed in part;

circuit court judgment affirmed

in part and reversed in part;

cause remanded.

CHIEF JUSTICE McMORROW, dissenting:

At issue in this appeal is whether, under the rape shield statute (725 ILCS 5/115–7 (West 1998)), evidence of two prior contradictory statements made by complainant during the course of this criminal investigation, regarding whether she had engaged in sexual activities with anyone other than defendant within 72 hours prior to this alleged sexual assault, was properly excluded. The majority answers this question in the affirmative. The majority holds that because the statements at issue reveal the complainant’s prior sexual activity, the rape shield statute precludes the admission of such evidence. In addition, the majority holds that this evidence is not admissible under the exception to the rape shield statute, which allows the introduction of otherwise-barred evidence “when constitutionally required” (725 ILCS 5/115–7(a)(2) (West 1998)). According to the majority, admission of this evidence is not “constitutionally required” for two reasons: (1) specific-act impeachment is prohibited in Illinois; and (2) the impeachment of the complainant would be on a matter that is collateral in this case.

I respectfully, but strongly, dissent from the opinion of the majority. I would hold that the appellate court below was correct in determining that, due to the nature of the evidence relating to defendant’s affirmative defense against the sole criminal charge remaining against him, the trial court misapplied the rape shield statute in denying defendant’s motion 
in limine 
seeking permission to cross-examine the complainant, T.K., regarding inconsistent statements she made at the time she reported the alleged crime and during the investigation.

The motion asserted that, upon submitting to a rape kit shortly after the alleged assault, T.K. stated to hospital personnel who collected samples for the kit that she had not had sexual intercourse with anyone other than defendant within 72 hours of the sample collection. Three months later, however, it was determined through DNA testing performed by the Illinois State Police lab that the seminal fluid and pubic hair found on T.K.’s underwear did not match defendant. In light of these test results T.K. admitted to police that she had, in fact, engaged in a sexual encounter with another man within 72 hours of the alleged assault. Defendant sought to introduce evidence of T.K.’s contradictory statements to the authorities to support his affirmative defense that he had reason to believe that T.K. was 18 years of age at the time of the incident. The evidence would show that T.K. lied at the time she reported the alleged crime. The evidence of her untruthful statements would also show that she was untruthful when she also stated to the authorities that she informed defendant that she was 16 years old, well before any sexual activity commenced. In addition, the evidence would support defendant’s version of the occurrence and his claim of innocence. For the reasons that follow, it is my view that the evidence of T.K.’s inconsistent statements to the emergency room personnel and the police was relevant and necessary to preserve defendant’s constitutional rights.

The instant cause presents this court not only with the first opportunity in 14 years, since our decision in 
People v. Sandoval
, 135 Ill. 2d 159 (1990), to address the general parameters of the rape shield statute, but also with our first opportunity to speak to the scope of the exception to the rape shield statute which allows for the introduction of otherwise-barred evidence when such evidence is “constitutionally required.” The matter before us underscores the tension between the demands of the rape shield statute and of the confrontation clause. We are vested with the responsibility to strike an appropriate balance between these demands to assure that the legislature’s intent in protecting the privacy of the victims of sexual crimes is fulfilled, while also ensuring that a defendant’s constitutional rights to confront his accuser and to present evidence in support of his defense are secured. In arriving at an appropriate balance, we must assess the nature and quality of the evidence at issue, as well as the need for that evidence to assure that the charges in the case are fairly adjudicated. In the matter before us, defendant raises the affirmative defense, available to him pursuant to 12–17(b) of the Criminal Code of 1961 (720 ILCS 5/12–17(b) (West 1998)), that he reasonably believed T.K. to be 17 years of age or older at the time of the occurrence. It is my view that, under the specific facts presented, the majority errs in mechanically applying the provisions of the rape shield statute, thereby excluding evidence which is relevant and necessary to defendant’s ability to defend against the charges brought against him. In my view, the majority too broadly construes the provisions of the rape shield statute at the expense of too narrowly construing the constitutional rights of defendant.

In order to answer the question presented by this appeal, it is necessary to briefly review the constitutional principles involved, the genesis and purpose of the rape shield statute, and the manner in which the statute has been interpreted by Illinois courts.

The confrontation clause provides: “In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***.” U.S. Const., amend. VI; accord Ill. Const. 1970, art. I, §8. The right of an accused to confront witnesses against him is a fundamental right made obligatory on the states through the fourteenth amendment. 
Pointer v. Texas
, 380 U.S. 400, 403, 13 L. Ed. 2d 923, 926, 85 S. Ct. 1065, 1068 (1965); 
People v. Campbell
, 208 Ill. 2d 203, 211 (2003). As a result of the protections found both in the due process clause of the fourteenth amendment and in the confrontation clause, the United States Supreme Court has held that the Constitution guarantees criminal defendants “ ‘a meaningful opportunity to present a complete defense.’ ” 
Crane v. Kentucky
, 476 U.S. 683, 690, 90 L. Ed. 2d 636, 645, 106 S. Ct. 2142, 2146 (1986), quoting 
California v. Trombetta
, 467 U.S. 479, 485, 81 L. Ed. 2d 413, 419, 104 S. Ct. 2528, 2532 (1984). The Court has further cautioned that “[t]hat opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on *** credibility *** when such evidence is central to the defendant’s claim of innocence.” 
Crane
, 476 U.S. at 690, 90 L. Ed. 2d at 645, 106 S. Ct. at 2147.

However, a defendant’s rights guaranteed under the Constitution are not absolute and “may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.” 
Chambers v. Mississippi
, 410 U.S. 284, 295, 35 L. Ed. 2d 297, 309, 93 S. Ct. 1038, 1046 (1973). One such instance is the rape shield statute. Under the rape shield statute, in a prosecution for the crimes of aggravated criminal sexual assault and aggravated criminal sexual abuse,

“the prior sexual activity or the reputation of the alleged victim *** is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim *** with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim *** consented to the sexual conduct with respect to which the offense is alleged; or (2) when constitutionally required to be admitted.” 725 ILCS 5/115–7(a) (West 1998).

Prior to the enactment of the rape shield statute in 1978, Illinois had a long-standing rule that in rape cases, where the accused offered a defense of consent, it was proper to introduce evidence of the complaining witness’ general reputation for immorality and unchastity. See 
People v. Allen
, 289 Ill. 218, 220 (1919) (“Where the defense to a charge of forcible rape is consent and the woman is of the age of consent, evidence of her bad character for chastity is competent as bearing on the probability of her consent to the act with which the defendant is charged, because it is more probable that an unchaste woman assented to such an act than a virtuous woman”); see also S. Murphy, 
Rape Shield Statute Upheld by Illinois Appellate Court
, 69 Ill. B.J. 110, 110 (1980) (Traditionally, it was presumed that “[t]ruthfulness and chastity in women were thought to be virtues that were found only together”). This rule changed with the enactment of the rape shield statute. The legislative history of the rape shield statute reveals that

“[t]he State policy underlying the rape shield statute *** is to prevent the defendant from harassing and humiliating the prosecutrix at trial with evidence of either her reputation for chastity or specific acts of sexual conduct with persons other than the defendant, since such evidence has no bearing on whether she consented to sexual relations with the defendant. Further, exclusion of such evidence keeps the jury’s attention focused only on issues relevant to the controversy at hand. Last, but not necessarily least, the exclusion promotes effective law enforcement because victims can report crimes of rape and deviate sexual assault without fear of having the intimate details of their past sexual activity brought before the public.” 
People v. Ellison
, 123 Ill. App. 3d 615, 626 (1984).

See also C. Loftus, Comment, 
The Illinois Rape Shield Statute: Privacy at Any Cost
, 15 J. Marshall L. Rev. 157, 162-64 (1982).

This court’s first opportunity to interpret and apply the rape shield statute was presented in 
People v. Sandoval
, 135 Ill. 2d 159 (1990). In 
Sandoval, 
the defendant was convicted of two counts of criminal sexual assault and one count of battery for repeated acts of nonconsensual sodomy with his former girlfriend. At trial, the complainant admitted that she had engaged in sodomy in the past with defendant, but stated that she had never willingly engaged in that practice with anyone else. The defendant attempted to impeach that statement with evidence that the complainant had participated in sodomy with others. Pursuant to the rape shield statute, the trial court refused to allow the impeachment.

At the time 
Sandoval
 was decided, the rape shield statute did not contain the exception for admission of otherwise-barred evidence when “constitutionally required,” the provision of the statute that is at issue in the matter before us. Rather, the statute provided that the prior sexual activity or the reputation of the complainant was admissible only “as evidence concerning the past sexual conduct of the alleged victim with the accused.” Ill. Rev. Stat. 1987, ch. 38, par. 115–7(a). In 
Sandoval
, this court expressed concern with respect to the then-existing statute’s complete prohibition of admitting evidence of the complainant’s prior sexual activity with someone other than the defendant. This court noted that a defendant’s rights under the confrontation clause may require the admission of a complainant’s prior sexual activity where such evidence is relevant and shows “bias, prejudice or motive.” 
Sandoval
, 135 Ill. 2d at 174-75. For example, such evidence may be admissible when it is offered to establish an ulterior motive for making a false charge against the defendant, is proffered to show that the complainant had made false accusations of rape in the past, or is offered to explain a physical fact such as the presence of semen, pregnancy, or a victim’s physical condition indicating intercourse. 
Sandoval
, 135 Ill. 2d at 185-87.

However, because the defendant in 
Sandoval 
did not establish that the exclusion of the evidence of the complainant’s prior sexual activity prevented him from presenting his theory of the case,
 i.e.
, that the complainant, his former girlfriend, consented to engage in sodomy but thereafter accused him of rape in retaliation for his rejection (
Sandoval
, 135 Ill. 2d at 175), this court was “not *** confronted with an applicable situation demanding emphasis of the right of confrontation over the preclusion of the rape shield statute” (
Sandoval
, 135 Ill. 2d at 191-92). Thus, under the specific facts presented in 
Sandoval
, this court concluded that the application of the rape shield statute did not unconstitutionally deny the defendant his right to confront the complainant.

Sandoval
, however, made it clear that the protections of the rape shield statute are not absolute, and that the statute should not be mechanically applied. 
Sandoval
 did not foreclose the possibility that evidence of a complainant’s prior sexual activity could be admissible; to the contrary, this court in 
Sandoval
 recognized–even absent the now-existing exception which allows admission of otherwise-barred evidence if such evidence is “constitutionally required”–that under certain “extraordinary circumstances” evidence of past sexual activity by the complainant may be both relevant and its admission necessary to preserve the defendant’s right to confrontation. 
Sandoval
, 135 Ill. 2d at 191-92. As our appellate court has observed, 
Sandoval
 did

“not impose any restriction on the type of circumstances that requires the statutory protection’s subservience to constitutional imperative. It merely provides a sample of possible situations where prior sexual conduct would have the probative value necessary for admission into evidence. *** [N]othing in 
Sandoval 
suggests limitation only to those circumstances where prior sexual history shows bias, prejudice, or motive. A fair reading of 
Sandoval
 instructs that prior sexual conduct may be relevant to prove a fact in issue, in which case, it should be admitted. It calls for a case-by-case examination of the reason tendered for the introduction of prior sexual conduct to determine its probative value.” 
People v. Hill
, 289 Ill. App. 3d 859, 863-64 (1997).

Subsequent to this court’s decision in 
Sandoval
, the General Assembly in 1994 amended the rape shield statute to expressly provide that the prior sexual activity of the complainant may be admitted “when constitutionally required.” 725 ILCS 5/115–7(a) (West 1998). This amendment codified the rationale expressed in 
Sandoval
 that a defendant’s constitutional right to confront witnesses must, in certain instances, supersede the statutory exclusion. It is my position that this exception to the rape shield statute should be construed narrowly, but also fairly. A defendant should not be afforded license to abuse, harass or generally attack his accuser; however, neither should a defendant be deprived of his constitutional right to confront the witnesses against him and have a meaningful opportunity to present a complete defense.

In its opinion, the majority reverses the appellate court below, finding that the panel improperly held that the trial court erred in excluding the disputed evidence pursuant to the rape shield statute. The majority criticizes the appellate court for “rel[ying] exclusively on 
People v. Grano
, 286 Ill. App. 3d 278 (1996)” (slip op. at 4-5) in arriving at its holding. The majority concludes that 
Grano
 does not support the appellate court’s result in the instant case, because 
Grano
 is factually distinguishable from the matter at bar. In 
Grano
, the court held that the circuit court erred in ruling that the rape shield statute prevented the defendant in that case from introducing evidence that the complainant had previously accused three other men of sexual assault. The majority emphasizes that the 
Grano
 court reasoned that because a verbal accusation did not constitute sexual activity, the rape shield statute had no application to the facts presented there. The majority then explains that here, although the disputed evidence also consists of the complainant’s statements, those statements, unlike the statements in 
Grano
, reveal her “prior sexual activity.” Therefore, in this case, the rape shield statute applies. Slip op. at 5.

Although the majority spends much time explaining that the appellate court’s reliance upon 
Grano
 was misplaced because this case and 
Grano
 are factually distinguishable, a close review of the appellate court’s opinion below reveals that the court did not analogize the facts at bar to the facts in 
Grano
. Rather, the court cited 
Grano
 for its “interpret[ation] [of] the parameters of the rape shield statute.” 333 Ill. App. 3d at 9. In 
Grano
, the court held that the rape shield statute was intended to prohibit evidence of sexual reputation, but that the statute “clearly was not designed to preclude the admission of all evidence relating to sex *** [and] that the legislature intended to exclude the actual sexual history of the complainant, not prior accusations of the complainant.” (Emphases omitted.) 
People v. Grano
, 286 Ill. App. 3d 278, 288 (1996). Applying this rationale, the appellate court below found that the disputed evidence would have shown that the complainant lied when she reported the alleged offense, a fact which the panel found highly relevant to defendant’s affirmative defense, wherein defendant claimed that complainant similarly lied when she reported to the police that she informed defendant that she was 16 years old before they engaged in any sexual activity. The fact that the evidence would also have shown that complainant actually did have sex with someone other than defendant was a coincidence and did not automatically bar the evidence from admission. Thus, the appellate court below concluded that the evidence of T.K.’s inconsistent statements should have been admitted in this case, as defendant’s affirmative defense–that he reasonably believed T.K. was 18–rested almost entirely upon whether defendant or T.K. was more credible. In sum, the discussion by the appellate court below of 
Grano
 is confined to the analytical principles which apply to the case at bar. Thus, the question is not, as the majority states, whether the facts in the matter at bar are analogous to those in 
Grano
. Rather, the inquiry is whether the analytical framework set forth in 
Grano
, and applied by the appellate court below, to interpret the provisions of the rape shield statute is correct.

Indeed, the interpretation of the parameters of the rape shield statute as set forth by the appellate court below and also in 
Grano
 is consistent with the analysis employed by other districts of the appellate court in cases involving the application of the rape shield statute. As we stated in 
Sandoval
, and as the two exceptions contained within the rape shield statute itself make clear, the preclusion of evidence which suggests prior sexual conduct by the complainant is 
not 
absolute. As the appellate court explained in 
People v. Hill
, 289 Ill. App. 3d 859, 862 (1997), the rape shield statute

“should never be mechanically applied to obscure relevant evidence that bears directly on guilt or innocence. The shield should be raised in a manner consistent with its purpose. That purpose is not to preclude relevant evidence. If it were, the statute could never conform with constitutional imperative under the sixth amendment’s confrontation clause (U.S. Const., amend. VI) or the fourteenth amendment’s due process clause (U.S. Const., amend. XIV). The rape shield statute is expressly designed to yield to constitutional protections that assure fair trials with just outcomes.” 
Hill
, 289 Ill. App. 3d at 862, citing 
Sandoval
, 135 Ill. 2d 159.

Thus, “[w]henever the rape shield statute’s preclusion of prior sexual conduct is invoked, a question of relevancy arises.” 
Hill
, 289 Ill. App. 3d at 863. “Relevant evidence” means evidence having “any tendency to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence.” 
People v. Morgan
, 197 Ill. 2d 404, 455-56 (2001); 
People v. Bolden
, 197 Ill. 2d 166, 184 (2001); see also 
People v. Patterson
, 192 Ill. 2d 93, 115 (2000) (relevancy is any tendency to make the existence of a fact that is of consequence more or less probable than it would be without the evidence in light of logic, experience, and accepted assumptions concerning human behavior).
 However, evidence which is relevant may nevertheless be deemed inadmissible if the prejudicial effect of admitting such evidence substantially outweighs its probative value. 
Patterson
, 192 Ill. 2d at 114-15; 
People v. Kliner
, 185 Ill. 2d 81, 146 (1998). In the specific context of evidence which is otherwise barred under the rape shield statute, such evidence may be admitted under the “constitutionally required” exception to that statute if it is relevant 
and
 also “germane to the accused’s right to confront witnesses against him or 
to present his theory of the case
.” (Emphasis added.) 
People v. Darby
, 302 Ill. App. 3d 866, 874 (1999); see also 
Hill
, 289 Ill. App. 3d at 863 (“If the evidence is probative, the statute’s protection yields to constitutional rights that assure a full and fair defense”).

Applying the above analytical framework, our appellate court has held that a defendant’s right to confront witnesses against him and to present his defense may supersede the protections of the rape shield statute. See, 
e.g.
, 
People v. Hill
, 289 Ill. App. 3d 859 (1997) (prior sexual activity of a child victim may be admissible to show age-inappropriate sexual knowledge did not derive from acts with defendant); 
People v. Grant
, 232 Ill. App. 3d 93 (1992) (instances of prior sexual activity may be admitted to explain the presence of semen in the complainant); 
People v. Mason
, 219 Ill. App. 3d 76 (1991) (due process precluded the application of the rape shield statute to exclude testimony that the alleged minor victim had viewed sexually explicit videotapes); 
People v. Gray
, 209 Ill. App. 3d 407 (1991) (it was error to bar defendant from cross-examining complainant about her alleged fear of pregnancy as a possible motive to falsely accuse defendant); 
People v.
 
Halcomb
, 176 Ill. App. 3d 100, 106 (1988) (the trial court improperly excluded evidence under the rape shield statute that complaint had revealed to defendant, immediately prior to the alleged assault, that she had recently had an abortion; the evidence “was offered not to establish prior sexual activity, but to prove that defendant and complainant engaged in intimate conversation immediately before the sexual acts in question took place. *** [There is a] distinction between evidence offered to prove sexual conduct and evidence offered to show the occurrence of an otherwise relevant conversation which revealed sexual conduct”). In each instance, the court found that the disputed evidence was admissible on the grounds that it was relevant and necessary to preserve the defendant’s constitutional rights.

Turning to the matter at bar, it is my view that the information defendant sought to introduce before the jury was both highly relevant to a disputed issue in this case and also necessary to preserve defendant’s constitutional rights and guarantee him a meaningful opportunity to present a complete defense. In this case, there is only one disputed issue with respect to the lone charge for which defendant was convicted, and, for which he will now be retried: whether defendant reasonably believed the complainant to be 17 years of age or older at the time of this incident. As the majority correctly notes, defendant was originally charged in a three-count indictment: count I charged defendant with criminal sexual assault (720 ILCS 5/12–13(a) (West 1998)), alleging that defendant committed an act of sexual penetration with T.K. knowing that T.K. was unable to give consent; count II charged defendant with aggravated criminal sexual abuse (720 ILCS 5/12–16(c)(1)(ii) (West 1998)), alleging that defendant, who was 17 years of age or older, committed an act of sexual conduct with a victim who was at least 13 years of age but under 17 years of age when the act was committed and the accused used force or threat of force to commit the act; and count III charged defendant with aggravated criminal sexual abuse (720 ILCS 5/12–16(d) (West 1998)), alleging that defendant committed an act of sexual penetration with a victim who was at least 13 years of age but under 17 years of age and the defendant was at least five years older than the victim. After a jury trial, defendant was acquitted of both the aggravated criminal sexual assault charge in count I and of the aggravated criminal sexual abuse charge in count II. Defendant was convicted, however, of the aggravated criminal sexual abuse charge in count III.

It is of import that defendant has been acquitted of the charges in which the use of force or the consent of complainant could be at issue. The only charge which remains pending against defendant is for aggravated criminal sexual abuse (720 ILCS 5/12–16(d) (West 1998)), which criminalizes an act of sexual conduct on the basis that, at the time of the incident, the complainant was under the age of 17 and the defendant was at least five years older. Pursuant to section 12–17(b) of the Criminal Code of 1961 (720 ILCS 5/12–17(b) (West 1998)), it is an affirmative defense to a charge brought under section 12–16(d) that the accused reasonably believed the person to be 17 years of age or over. In order to avail himself of this affirmative defense, a defendant is required to present evidence at trial to demonstrate the existence of a reasonable belief that the complainant was at least 17 years old at the time of the occurrence. 
People v. Jones
, 175 Ill. 2d 126, 131 (1997).

There is no dispute in this case that, at the time of the incident in the matter at bar, T.K. was under the age of 17 and defendant was at least five years older. Thus, absent the affirmative defense available to defendant under section 12–17(b), defendant would be found guilty of the charge. However, solely as a result of the affirmative defense available to defendant under section 12–17(b), a disputed issue arises in this case: whether defendant was reasonable to believe that T.K. was 17 or over at the time of the occurrence. Defendant testified that, upon first meeting T.K., she stated that she was 18 and that he had no reason to believe that she was younger. According to the testimony of defendant, it was only during the act of intercourse that T.K. informed him, for the first time, that she was 16 years of age. Defendant stated that he then immediately stopped the act upon learning T.K.’s true age. Conversely, T.K. testified that she informed defendant upon their meeting that she was 16 years old. The significance of these statements with respect to defendant’s affirmative defense cannot be overstated. If complainant, in fact, told defendant that she was 16, it certainly would not have been reasonable for him to believe that she was older. In turn, defendant could not avail himself of the affirmative defense, and he would be found guilty. If, however, defendant had reason to believe that complainant was 17 or older, he would be acquitted of the charge.

A review of the trial record shows that, absent T.K.’s testimony that she told defendant that she was 16 before any sexual activity took place, there was virtually no evidence which tended to rebut his affirmative defense that it was reasonable for defendant to believe that T.K. was 17 years of age or older. First, as stated, defendant testified that complainant told him that she was 18 at the time that they first met. In addition, the record reveals that, at the time of the offense, T.K. was 16 years and 7 months old, less than 5 months away from her seventeenth birthday. Defendant did not know T.K. prior to this incident, and he first met her late at night during a social gathering hosted by a 25-year-old woman and her 20-year-old boyfriend. Nearly all of the people at the gathering were 18 years of age or older, and when defendant first met T.K. she had been consuming alcohol, an activity which is restricted to adults. Shortly after defendant arrived at the gathering, a group of people, including T.K., accompanied him to a liquor store to buy alcohol for the party, and T.K. told defendant to buy her a beer. Further, T.K. was apparently free to stay at the party all night, into the early morning hours, without any curfew. The totality of the circumstances supports defendant’s affirmative defense that he reasonably believed T.K. to be over 17 years of age.

I submit that, had the jury been informed that T.K. lied about a critical fact at the same time she reported that she was sexually assaulted by defendant, and that she recanted the false statement three months later, only after being confronted by police with the fact that DNA testing revealed that defendant could not have been the source of semen recovered from her, it is very likely that the jurors would have questioned T.K.’s assertion that she told defendant that she was 16 before the commencement of any sexual activity. The disputed evidence was not offered to establish T.K.’s prior sexual activity or to portray her as a sexually promiscuous person. Rather, it was offered to show that, in reporting the very crime for which defendant was on trial, the claimant lied about significant facts, which, incidentally, also revealed her past sexual conduct.

Accordingly, I would hold that the application of the rape shield statute in this case does not serve the statute’s legitimate purposes. The exception for the admission of otherwise-barred evidence when “constitutionally required” should be interpreted in a manner which preserves the legitimate purposes of the statute, while also safeguarding a defendant’s constitutional rights. In my view, the facts in the matter at bar are divorced from the legitimate concerns of the rape shield statute. Indeed, under the unique facts of this case, it would not behoove defendant to attempt to admit the disputed evidence in an effort to reveal complainant’s past sexual conduct or to raise an inference of promiscuity on the part of T.K., because the crime with which defendant is charged is based solely upon the disparity in the parties’ ages, and does not involve any question or issue with respect to whether T.K. consented to, or was forced into participating in, the sexual conduct. In addition, defendant’s affirmative defense is not grounded in a theory that claimant consented to the sexual conduct; rather, his defense revolves around the question of whether he had a reasonable belief that T.K. was over 17 years of age. Applying the rape shield statute to block admission of the disputed evidence in this case 
renders the statute a mechanical and arbitrary rule which bars any evidence that touches upon sex, however relevant or necessary that evidence may be to the defense. 
In this case, the application of the rape shield statute improperly limited defendant’s ability to present his defense.

In sum, the evidence excluded under the rape shield statute in this case was relevant to the only disputed issue in this matter: whether defendant had reason to believe that complainant was 17 years of age or older at the time of the incident. The evidence was relevant in that it showed that the complainant was untruthful regarding circumstances surrounding the alleged offense when she initially reported the incident to the authorities. In order to assess the results obtained from comparison of the rape kit materials with the defendant’s DNA markers, it was critical for the laboratory personnel to know whether the complainant engaged in sexual intercourse with anyone other than defendant during the 72-hour period preceding the sample collection. Had defendant been permitted to show that T.K. lied when she reported the circumstances surrounding the alleged offense to the medical personnel on the night she accused defendant, the jury would have been made aware that T.K. was untruthful with respect to her account of the events of that evening, and that her untruthfulness made defendant’s guilt appear more likely. In other words, the evidence would show that T.K. lied when she reported the incident to the authorities, and would be relevant to defendant’s affirmative defense, in which he maintained that he had reason to believe that complainant was 18 years of age, and that T.K. lied when she testified that she told him she was 16 years old upon their initial meeting, and well before the start of any sexual activity. Absent T.K.’s testimony that she told defendant she was 16 prior to the sexual activity, there was ample evidence which could have supported defendant’s claim that he had reason to believe that T.K. was over 17. The disputed evidence was also relevant in that it supported defendant’s contention that he cooperated with the authorities throughout the investigation by admitting to the sexual conduct and providing blood and semen samples for DNA comparison, actions which were consistent with defendant’s claim of innocence. Finally, the court’s ruling on defendant’s motion 
in limine 
also prevented defendant from informing the jury that the physical evidence corroborated his account of what happened: no semen matching defendant’s DNA profile was found in T.K. One shudders to think of the consequences of such a lie in the time before the advent of DNA analysis. The presence of seminal fluid in the complainant could have had a devastating impact upon defendant had the complainant told the same lie.

The majority, however, rejects the argument that the disputed evidence is admissible under the “constitutionally required” exception to the rape shield statute because impeachment of a witness by specific acts of misconduct is prohibited in Illinois. See 
People v. West
, 158 Ill. 2d 155, 162 (1994). I agree with the majority that it is the general rule that a witness may not be cross-examined regarding instances of prior criminal conduct not leading to a conviction, unless that conduct also relates to some issue in the case other than credibility. The rationale for this general prohibition has been explained as follows: “The reason for barring questions about unrelated prior bad acts is to avoid impeachment by insinuation on such matters and to prevent juries from being distracted by marginal but inflammatory matters.” J. Corkery, Illinois Civil & Criminal Evidence §608.102, at 293 (2000); see also M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §608.5, at 390 (8th ed. 2004) (“The credibility of any witness *** may not be attacked upon cross-examination by questioning the witness concerning specific instances of her misconduct not leading to a conviction; inquiry with respect to specific acts of misconduct is barred on the ground that such examination is regarded as overly prejudicial in relation to its probative value”).

However, the general rule should not apply to the unique facts presented in the case at bar for two reasons: first, claimant’s so-called “bad acts” occurred during the reporting and investigation of the very crime for which defendant is charged; and second, as explained above, the probative value of this evidence to defendant’s affirmative defense is high. As stated, not only is the crime with which defendant is charged based solely upon the disparity in the parties’ ages and does not involve any question with respect to whether T.K. consented to, or was forced into participating in, the sexual conduct, but also defendant’s affirmative defense is grounded in the theory that he had a reasonable belief that T.K. was over 17 years of age and does not revolve around any contention that claimant consented to the sexual conduct.

The cases cited by the majority in support of its conclusion that the disputed evidence is barred under the general rule prohibiting specific-act impeachment are all factually distinguishable from the matter at bar: in each cited case, the general rule was applied where a party sought to impeach a witness with specific incidents of 
prior
 bad acts 
unrelated
 to the case on trial. For example, in 
West
, this court held that it was error when defense counsel attempted to impeach the credibility of the minor victim by asking the minor’s school teacher if the minor “ ‘had ever exaggerated the truth *** before.’ ” 
West
, 158 Ill. 2d at 161-62. Similarly, in 
People v. Morrow
, 303 Ill. App. 3d 671, 680 (1999), the court held that evidence of the defendant’s past use of aliases was not proper impeachment of his credibility in an unrelated trial for murder and armed robbery. In 
People v. McGee
, 286 Ill. App. 3d 786, 796 (1997), the court found that the defendant’s use of an assumed name during a prior arrest had nothing to do with the first degree murder charge for which the defendant was then on trial. Finally, in 
Podolsky & Associates L.P. v. Discipio
, 297 Ill. App. 3d 1014, 1024 (1998), the appellate court held that the trial court did not err in excluding evidence that the defendant attorney had previously been suspended from the practice of law. In each of the above cases, the rationale for generally barring specific-act impeachment was satisfied by excluding the evidence: admitting the prior, unrelated bad acts of the witnesses would amount to impeachment by insinuation, distract the jury from the issues in the case, and would be overly prejudicial in relation to the questionable probative value of the evidence.

Here, in contrast, the evidence in dispute did not concern a past incident of untruthfulness or a past “bad act” on the part of T.K. that was otherwise unrelated to the instant charge pending against defendant. Rather, the evidence showed that T.K. lied when she reported the very offense for which defendant was on trial, and for which he will be retried: accordingly, her statements are inexorably intertwined with the charge. In addition, as explained in detail above, the rationale for generally barring specific-act impeachment would not be furthered by excluding the disputed evidence in the matter at bar. The fact that T.K. was untruthful at the time she lodged charges against defendant is relevant to whether she also lied to the authorities when she stated that she informed defendant that she was 16 years of age. In addition, the lie she told obscured the fact that the truth corroborated defendant’s versions of events that he completely cooperated with the investigation and that he stated that he stopped sex when the complainant informed him that she was 16.

The majority also rejects the argument that the disputed evidence is admissible under the “constitutionally required” exception to the rape shield statute because, in the view of the majority, the evidence would be used to impeach T.K. on a collateral matter which is not relevant to the case. According to the majority, whether T.K. had engaged in sexual relations with someone else is “
wholly
 unrelated to the question of whether defendant reasonably believed that T.K. was of age when the act of sexual penetration took place.” (Emphasis in original.) Slip op. at 7. Citing to 
Sandoval
, the majority states “[t]his court has specifically held that precluding a defendant in a sexual assault trial from impeaching a complaining witness on a collateral matter does not contravene the constitution.” Slip op. at 9. The majority concludes by stating that “[h]ere, as in 
Sandoval
, defendant seeks to impugn his accuser’s credibility by showing that she lied regarding a matter collateral to the controverted issues in the case.” Slip op. at 9. I disagree. It is my view that the proposed impeachment involves a noncollateral matter, and the facts in 
Sandoval
 relating to this issue are distinguishable from those in the instant cause.

 “Collateral matters are basically ‘side issues’ or ‘small stuff’, matters unimportant to the principal issues of the case.” J. Corkery, Illinois Civil & Criminal Evidence §608.103, at 294 (2000). The rule precluding impeachment of a witness on a collateral matter “reflects considerations of judicial economy and prevents hours and days of a trial being consumed with taking evidence on the question of whether and under what circumstances the witness did or did not engage in an act only marginally relevant to credibility.” J. Corkery, Illinois Civil & Criminal Evidence §608.103, at 295 (2000). The collateral evidence rule, however, is not absolute. It is well settled that “[a] matter employed to contradict or as self-contradiction is noncollateral if the subject matter is relevant in the litigation to establish a fact of consequence, that is, relevant for a purpose other than mere contradiction of the in-court testimony of the witness.” M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §607.2, at 355 (8th ed. 2004). Stated another way, “[a] matter is non collateral, and thus important, if it is: 1) relevant to an issue in the case other than credibility of a witness; or 2) relevant to the credibility of a witness in an important way.” J. Corkery, Illinois Civil & Criminal Evidence §608.105, at 297 (2000).

The majority errs in finding that T.K.’s untruthful state of mind at the time she reported this alleged crime is a collateral matter in this case. In order to find that the disputed evidence would lead to impeachment on a collateral issue, the majority mistakenly focuses on the fact that the evidence in dispute reveals that T.K. engaged in sexual relations with another person shortly before the alleged crime. Although I agree with the majority to the extent that complainant’s prior sexual conduct is unrelated and unimportant to the principal issues of this case, the disputed evidence only coincidentally touched upon sex. The focus on this evidence should be directed toward the fact that T.K. was in an untruthful state of mind and lied when she reported this alleged crime to the authorities. This is relevant to her credibility in a very important way, because it goes to the only disputed issue in the case: whether defendant was reasonable to believe that complaint was 18 years of age, or whether his belief was unreasonable because T.K. informed him that she was 16 years old when they met. Accordingly, the evidence does not involve a collateral matter.

Our decision in 
Sandoval 
does not change this conclusion. In 
Sandoval
, this court held that two avenues of impeachment pursued by the defendant against the complainant were collateral. First, this court held that impeachment of the complainant’s statement that she did not engage in sodomy with any one other than the defendant was collateral and irrelevant to the question of whether she had been forced to have sex with the defendant. 
Sandoval
, 135 Ill. 2d at 181. Similarly, this court held that, although the complainant had stated on cross-examination that she had not been able to date anyone since the assault, the defense was properly barred from introducing evidence to show that the witness had been seen with a man just prior to the beginning of the trial. This court held that admitting that evidence would have improperly allowed the defendant to contradict the complainant on a collateral matter. 
Sandoval
, 135 Ill. 2d at 181.

As explained above, unlike the evidence discussed in 
Sandoval
, the disputed evidence in the matter at bar is not collateral to the sole disputed issue in the case. To the contrary, the evidence is critical not only to defendant’s affirmative defense, 
i.e.
, that he reasonably believed that T.K. was 18 years of age, but also to the State’s burden of showing that defendant’s belief, under the circumstances presented, was unreasonable. In sum, the disputed evidence was central to defendant’s opportunity, guaranteed him under the Constitution, to present a complete defense.

As a final matter, I find it necessary to respond to the criticism made of this dissenting opinion by the majority. The central focus of the majority’s response to my dissent is upon semantics. The majority takes great pains to point out that this dissent “characterizes” the complainant as having lied about a critical fact in the reporting of this crime to the authorities. Slip op. at 8. The majority then explains that, “for purposes of clarification,” the complainant’s lie was made to “an emergency room nurse,” and that “there is no indication” that this lie was repeated to the police. Slip op. at 8. The majority then states that, “[r]ather, the evidence is that once the police inquired of the victim, she immediately admitted to them the truth.” Slip op. at 8. Thus, it appears that, in the view of the majority, because the complainant’s lie was told to emergency room personnel, the lie was therefore neither told to the “authorities,” nor told as part of complainant’s “reporting” of the alleged crime. Upon this basis, the majority attempts to minimize the gravity of complainant’s untruthfulness. I strongly disagree with the statements of the majority in this respect.

Under the Abused and Neglected Child Reporting Act (325 ILCS 5/1 
et seq
. (West 1998)), “[a]ny physician, resident, intern, hospital, hospital administrator and personnel engaged in examination, care and treatment of persons, *** having reasonable cause to believe a child
(footnote: 3) known to them in their professional or official capacity may be an abused child *** shall immediately report or cause a report to be made to the Department [of Children and Family Services].” 325 ILCS 5/4 (West 1998). This statute further provides that “[a]ll reports of suspected child abuse *** made under this Act shall be made immediately by telephone to the [DCFS] central register ***. The Department shall within 24 hours orally notify local law enforcement personnel and the office of the State’s Attorney of the involved county of the receipt of any report alleging *** serious injury to a child including *** sexual abuse to a child ***.” 325 ILCS 5/7 (West 1998). If an individual who is mandated to report such incidents fails to follow the procedures set forth in this Act, the penalties for the failure to report are high: “[a]ny physician who willfully fails to report suspected child abuse *** as required by this Act shall be referred to the Illinois State Medical Disciplinary Board ***. Any other person required by this Act to report suspected child abuse *** who willfully fails to report such shall be guilty of a Class A misdemeanor.” 325 ILCS 5/4.02 (West 1998).

In the matter at bar, the complainant was 16 years of age when she went to Rockford Memorial Hospital, alleging that she had been forced to participate in sexual acts by defendant. Under these facts, any hospital personnel engaged in treating the complainant, as well as the hospital administrator and the hospital itself, were mandated to report this incident to DCFS. 325 ILCS 5/4 (West 1998). In turn, DCFS is statutorily mandated to transmit this report to the local police and the office of the State’s Attorney. 325 ILCS 5/7 (West 1998). Accordingly, in view of this statutory reporting procedure, it is not a mischaracterization of this record to state that when complainant lied to emergency room personnel concerning whether she had sexual contact with someone other than defendant within 72 hours of submitting to a rape kit, complainant told a lie during her reporting of this crime to the authorities.

In cases of sexual assault and/or abuse, very often the first contact an alleged victim has with individuals apart from her friends and family is with medical personnel, and not with the police. The same is true here: complainant testified that after she told her friends that she was raped, they immediately brought her to the hospital. The record reveals that, at the hospital, the medical personnel placed complainant in a special room apart from the emergency area, immediately submitted complainant to a rape kit and initiated the gathering of information about the alleged crime. The medical personnel and the hospital are statutorily authorized and mandated to follow procedure in reporting this information, which is ultimately transmitted to the local law enforcement agency and the office of the State’s Attorney for investigation and prosecution. In addition, the specific question asked of complainant to which she responded with a lie was posed to her as part of the information needed to complete complainant’s submission to the rape kit, which the record indicates was taken by Rockford police officer Rose Mary Matthews from the hospital to the police station, and thereafter transported to the Illinois State Police crime lab for analysis. It was as a result of the information-gathering process that began at the hospital that defendant was charged with aggravated criminal sexual abuse. Thus, complainant’s untruth permeated the investigation of this alleged crime from its inception. I emphasize that it was
 three months later
, only after DNA testing revealed that defendant could not have been the source of semen found in complainant, that she recanted her previous statement and admitted to the police that she had in fact engaged in intercourse with someone else on May 9. Thus, in light of the mandated statutory reporting procedure in this case, the majority’s contention that complainant’s lie to the medical personnel was not a lie to the “authorities” in the “reporting” of this alleged crime is untenable.

In addition, the majority criticizes this dissent for, in the words of the majority, “contend[ing] that the court’s ruling on the motion 
in limine
 under review precluded defendant from informing the jury that no semen matching his genetic profile had been recovered from the victim.” Slip op. at 10. The majority states that this “is inaccurate” because “[a]lthough the circuit court did preclude defense counsel from so informing the jury, this was clearly a separate and independent ruling from the court’s ruling that defendant could not cross-examine the victim with her inconsistent out-of-court statements.” Slip op. at  10. To the contrary, my reading of the record reveals that both the issue of whether complainant could be questioned at trial about her inconsistent statements to the medical personnel and the police, and the issue of whether defendant could present any evidence with respect to the fact that no semen matching his DNA was recovered from the victim, were argued and decided at the same time. It appears from the trial transcript that the circuit court judge and the parties operated under the assumption that, pursuant to the protections of the rape shield statute, 
any
 evidence dealing with complainant’s prior sexual conduct–however remote–was precluded from admission.

The trial transcript reveals that, during a hearing on the parties’ motions 
in limine
, defense counsel requested that he be allowed to introduce evidence of complainant’s inconsistent statements regarding whether she had sex with anyone other than defendant in the 72 hours prior to her submission to the rape kit, as well as evidence that defendant’s semen was not found in the complainant. The State objected to both requests. The court first ruled that the complainant could not be questioned about her inconsistent statements with respect to whether she had sexual conduct with another person 72 hours prior to submitting to the rape kit because “the Rape Shield Act does preclude the defense from inquiring” into that subject.

Then, the court turned to defendant’s request to introduce evidence that his DNA was not found in the complainant. The State argued that such evidence should be excluded under the rape shield statute because “the information from the rape kit has nothing to do with this defendant, it has to do with the other party.” In agreeing with the State and denying defendant’s request, the circuit court judge stated, “I believe that that questioning would be directed to exactly what the Rape Shield Statute is intended to keep out, therefore that would be precluded.” When defense counsel attempted to clarify the scope of the court’s ruling and asked whether he could simply inquire of the police officers during trial whether defendant voluntarily submitted to DNA testing, the State responded as follows: “it is a slippery path down to [
sic
] the Rape Shield statute to allow any reference to this issue. Because the reason that, that the information about the rape kit is not coming in is because of this other information [that someone else’s DNA was recovered from complainant], and I just think it would lead to questions and confusion with the jury.” In ruling that defense counsel could not discuss 
anything
 with respect to DNA testing, the court stated that it was “going to preclude that argument because, again, of the Rape Shield Statute, and in view of the defense that you are indicating to the Court that you’re going to have in this case.”

The error of the majority’s assertion that there was no “logical or legal” connection between the circuit court’s rulings barring reference to complainant’s inconsistent statements and barring the introduction of any evidence regarding DNA testing is further revealed by a statement made by the circuit court judge later in the proceedings. After defense counsel unsuccessfully moved for a mistrial because one of the State’s witnesses had testified that complainant had been subjected to a rape kit at the hospital, despite the fact that the circuit court had barred all mention of this event, the circuit court had occasion to set forth the basis of its prior rulings barring admission of such evidence. The court stated: “the Court’s ruling to exclude mention and any testimony regarding genetic markers or the results of any rape kit was based in part [
sic
], and the Court followed the Rape Shield doctrine in excluding that evidence because, as I understand it, the results of the rape kit indicate possible sexual conduct with someone other than this defendant.” Therefore, contrary to the position of the majority, the record supports the conclusion that the two rulings were linked: both rulings appear to be premised on the reasoning that allowing such evidence at trial would violate the rape shield statute because it would touch upon complainant’s prior sexual conduct.

For the foregoing reasons, I respectfully, but strongly, dissent from the opinion of the majority. I would affirm the judgment of the appellate court.

FOOTNOTES
1:     
1
Although specific acts evidence can come in under the Federal Rules of Evidence, even there such evidence is not necessarily admissible. Rather, its admissibility in any given case rests within the discretion of the trial court. Fed. R. Evid. 608(b)(1). 

2:     
2
In 
Sandoval
, the trial court erred in admitting complainant’s original statement that she had not had anal sex with others, but the court cured this error by instructing the jury to disregard the statement before submitting the case to the jury. 
Sandoval
, 135 Ill. 2d at 192-93.

3:     
3
For the purposes of this statute, a “child” is defined as “any person under the age of 18 years, unless legally emancipated by reason of marriage or entry into a branch of the United States armed services.” 325 ILCS 5/3 (West 1998). Thus, complainant falls within this definition.