## THE LACLEDE BANK

*v.*

## CHAUNCEY H. KEELER.

*Filed at Springfield March 26, 1884.*

| 109 | 385 |
| 130 | 316 |
| 31a | 141 |
| 109 | 385 |
| 135 | 341 |
| 109 | 385 |
| 148 | 177 |
| 109 | 385 |
| 160 | 359 |
| 109 | 385 |
| 157 | 252 |
| 109 | 385 |
| 172 | 121 |
| 109 | 385 |
| 92a | 1  45 |

1. IMPEACHMENT OF WITNESS—*as to the mode.* The proper mode of inquiring into the general reputation of a person who has given testimony in a cause, for truthfulness, is to ask the impeaching witness whether he knows such person's general reputation among his neighbors for truth and veracity, and what that reputation is. In the English courts the course is, further, to inquire whether from such knowledge the impeaching witness would believe that person under oath. While this court has adopted the English rule as correct, it has never held, and such is not the law, that it is compulsory that the opinion of the witness shall be asked or stated.

2. The general practice in the circuit courts of this State has been, to leave it optional with the party calling the impeaching witness, to ask the opinion of the witness, or not, as he may think proper; and this practice is correct, and in harmony with the current of authority upon the question.

3. ATTORNEY AND CLIENT—*of dealings between them.* The law does not prohibit an attorney from purchasing property from his client when the transaction is fair and honest, and in no manner tainted with fraud, undue influence or corruption.

4. ATTACHMENT—*whether the debtor has such an interest as will be subject to attachment.* A mere stockholder in a corporation procured his attorney to purchase the indebtedness of the corporation, which was secured by a deed of trust on the property of the corporation, the attorney advancing his own money for that purpose, and the corporation being unable to pay the

25—109 ILL.

debt, he caused a sale of the property to be made, at which the client became the purchaser, but paid nothing, agreeing to pay the attorney within sixty days or convey the property to him, and the trustee's deed, though executed, was never delivered to the purchaser, but left with the attorney to whom the purchase money was coming, and the purchaser being unable to pay the amount of his bid, conveyed the property to the attorney according to his prior agreement, which conveyances were recorded before the levy of an attachment issued against such purchaser. It was *held,* that such purchaser had no title, legal or equitable, subject to the attachment, his only interest being his bid, and his deed being a transfer of that.

5. Sale under trust deed—*inadequacy of price.* The fact that a person acquires property, through a sale under a power in a deed of trust, at less than its real value, when the sale was at public vendue, where all wishing might bid, and it was conducted legally, will not impair the validity of the sale.

Appeal from the Circuit Court of St. Clair county; the Hon. Amos Watts, Judge, presiding.

Mr. Charles W. Thomas, for the appellant:

The English rule requiring that the attacking witness should testify that he would not, from his knowledge of the reputation of the attacked witness, believe him on oath, has been adopted in this State. Starkie on Evidence, (9th Am. ed.) 210; *Massey* v. *Farmers' Bank,* 104 Ill. 327; *Frye* v. *Bank of Illinois,* 11 id. 369. And for a statement of the reasons for this rule, see *Hamilton* v. *People,* 29 Mich. 185, and *Eason* v. *Chapman,* 21 Ill. 33.

It is the policy of the law to forbid all dealings between an attorney and client whereby the attorney obtains any advantage. *Jennings* v. *McConnell,* 17 Ill. 148; *Alwood* v. *Mansfield,* 59 id. 496; Weeks on Attorneys, sec. 268.

So rigidly is this rule enforced that it is applied in cases where the relation has ceased, but its influence continues. Weeks on Attorneys, sec. 268, note.

The burden of proof is shifted upon the attorney to show that every transaction had with a client was fair. *Merryman* v. *Euler,* 59 Ind. 588.

Where an attorney buys a note, given by his client, and secured by a mortgage, as in the case at bar, the client is entitled to all the benefits of the purchase. *McDowell* v. *Milroy,* 69 Ill. 498.

And the rule is not changed or affected by the circumstance that the attorney is a member of a firm of lawyers. The relation exists between the client and every member of the firm. Weeks on Attorneys, sec. 244; *Walker* v. *Goodrich,* 16 Ill. 341.

Mr. A. S. WILDERMAN, and Mr. CECIL V. SCOTT, for the appellee:

It is exclusively the province of the jury to determine to what extent the credibility of a witness is affected by testimony tending to his impeachment. *Craig* v. *Rohrer,* 63 Ill. 325; *Roach* v. *People,* 77 id. 31.

It is true, an impeaching witness may be asked whether he would believe the witness under oath; but it is not necessary to ask such question to effect an impeachment. *People* v. *Tyler,* 35 Cal. 553; *Massey* v. *Farmers' Bank,* 104 Ill. 334.

There is no rule of law which prohibits an attorney from becoming the purchaser of land owned by his client. *Hess* v. *Voss,* 52 Ill. 481; Weeks on Attorneys, 450.

Messrs. WILDERMAN & HAMILL, for the interpleader the St. Louis Carbon Works:

The facts, as testified to by all the witnesses, do not show that the relation of attorney and client ever existed between Hauessler and Keeler, either generally or in relation to this particular business. Hauessler had refused to advise Keeler, or to be employed by or for him, and he had employed Noble & Orrick. Weeks on Attorneys, secs. 153, 154; *Granger* v. *Warrington,* 3 Gilm. 299; *Setzer* v. *Wilson,* 4 Ired. 501.

The rule in regard to impeaching a witness by evidence of general reputation for truth and veracity, does not seem

to render it necessary to prove that the impeaching witness would not believe him under oath, but simply permits the question to be asked. *Frye* v. *State Bank*, 11 Ill. 378; *Crabtree* v. *Hagenbaugh*, 25 id. 233; *People* v. *Tyler*, 35 Cal. 553.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action in attachment, brought by the Laclede Bank, in the circuit court of St. Clair county, against Chauncey H. Keeler. The writ was issued on the 19th day of July, 1881, and was levied upon the real estate in question on the same day. Subsequently, and on the 17th day of March, 1882, a judgment was rendered against the defendant in the attachment. In the meantime, however, and on October 22, 1881, the St. Louis Carbon Works Company appeared in the action and filed an interpleader, in which the corporation claimed to own the real estate attached; that Keeler, (defendant in attachment,) on the 1st day of July, 1881, for a good and valuable consideration, conveyed the property to Hauessler, who recorded his deed July 9, 1881, and that on the 9th day of September, 1881, Hauessler conveyed to the interpleader.

A number of replications were filed, upon which issue was joined. The third replication is, that the deed from Keeler to Hauessler was in fact a mortgage, and that Keeler retained an equitable interest in the land conveyed, of which the interpleader had notice when it took its deed from Hauessler. There was a rejoinder traversing this replication, and issue was joined. The fifth replication is, that the deed from Keeler to Hauessler was in fact a mortgage, given to secure an indebtedness of, to-wit, $7756, due from Keeler to Hauessler, the land conveyed being worth at the time $15,000, of all of which the interpleader had notice, etc. To this there were two rejoinders,—first, that the deed was absolute; and second, that the land was not worth $15,000, and the inter-'

pleader had no notice. Issue was joined on both of these rejoinders. The sixth replication is, that when the deed from Keeler to Hauessler was made, Hauessler was a practicing attorney at law in St. Louis, retained by Keeler to advise and counsel him with reference to claims of Keeler's creditors, and that Hauessler, as such attorney, advised Keeler to make the deed, so as to hinder and delay Keeler's creditors, and the deed was made for said purpose, of which the interpleader had notice. To this there was a rejoinder, which merely said, generally, that the replication was not true. The seventh replication is, that the deed from Keeler to Hauessler was made, as Hauessler well knew, for the purpose of hindering and delaying Keeler's creditors, of which the interpleader had notice, etc. To this there was a rejoinder, in general terms, that the replication was not true.

Upon the issues formed, a trial was had before the court, a jury having been waived by the parties, and the court found in favor of the interpleader, and as a freehold is involved, the plaintiff in the attachment, the Laclede Bank, has appealed directly to this court.

On the trial of the cause, Chauncey H. Keeler was called as a witness, and testified in favor of appellant. For the purpose of impeaching the testimony of the witness, appellee called several witnesses, who testified that they were acquainted with the general reputation of the witness for truth and veracity in the neighborhood in which he resided, and that his reputation was bad. It was contended that the evidence offered did not go far enough to impeach the testimony of Keeler, and in order to save the question, two propositions (Nos. 1 and 2) were submitted to the court, to be held as law in the case, which, in substance, declared that the witness Keeler was not successfully impeached unless the witnesses called to impeach were asked whether, from their knowledge of his reputation, they would believe him upon his oath. The regular mode of examining into the general reputation is, to

inquire of the witness whether he knows the general reputation of the person in question among his neighbors for truth and veracity, and what that reputation is. In the English courts the course is, further, to inquire whether from such knowledge the witness would believe that person upon his oath. (1 Greenleaf on Evidence, sec. 461.) The English rule was adopted as the correct one in this State in *Frye* v. *Bank of Illinois*, 11 Ill. 367, and followed in subsequent cases. *Eason* v. *Chapman*, 21 Ill. 34; *Massey* v. *Bank*, 104 id. 327.

But while the rule we have heretofore established permits the witness, after he has stated that he knows the general reputation of the person for truth and veracity among his neighbors, to go on and state that, judging from such reputation, he would not believe the person upon his oath, yet this court has never held, and we do not understand it to be the law, that the rule is compulsory that the opinion of the witness should be asked or stated. The cases cited *supra,* which establish the rule in this State, none of them hold that the law requires the opinion of the impeaching witness to be taken. Indeed, no authority has been cited in the argument which establishes or sustains such a doctrine, and we are aware of no such authority. On the other hand, in *People* v. *Tyler*, 35 Cal. 553, where the trial court held that it was essential that the impeaching witness should testify that from such reputation he would not believe the person upon oath, on appeal the Supreme Court reversed the judgment, and decided that the ruling was erroneous. Our attention has not been called to any case in this State where the precise question has arisen, but we think the general practice in the circuit courts has been to leave it optional with the party calling the impeaching witness, to ask the opinion of the witness, or not, as he may think proper; and this practice, in our judgment, is correct, and in harmony with the current of authority bearing upon the question.

The court was also requested, in the third proposition, to hold, in substance, that if Hauessler was a member of a firm of practicing attorneys, and that the relation of attorney and client existed between Keeler and the firm when Keeler deeded the property to Hauessler, then the equitable title to the property was in Keeler, and that the property was subject to the attachment. The refusal of the court to allow this proposition is relied upon as error. The rules of law which govern the duties of an attorney to his client are well settled, and are not of doubtful meaning. As was said in *Alwood* v. *Mansfield*, 59 Ill. 496: "It is the duty of the solicitor to protect the interest of his client. The client is entitled to the full benefit of the best exertions of his solicitor; and the solicitor may not bring his own personal interest in any way into conflict with that which his duty requires him to do on behalf of his client." We do not, however, understand it to be the law that an attorney is prohibited from purchasing property from his client, where the transaction is fair and honest, and in no manner tainted with fraud, undue influence or corruption. Dealings between attorney and client will be scrutinized closely, in order to guard against wrong being committed, owing to the confidential relations existing between them, and the supposed personal influence of an attorney over his client; but there is no rule of law which absolutely prohibits a sale merely on account of the existence of the relation of attorney and client. (*Hess* v. *Voss*, 52 Ill. 472.) A sale of property from a client to an attorney will be sustained, where the transaction is open, honest and fair, and no undue influence is used. Under the proposition submitted to the court to be held as law, if the relation of attorney and client existed when the deed was made, no title passed, although the attorney concealed nothing, made no misrepresentations, and although the transaction may have been in every respect fair and honest. Such is not the law, and it would have been error if the court had given the proposition.

But independent of the decision of the court on these propositions of law, we perceive no ground upon which it can be held that the property is liable to the attachment. Unless Keeler, at the time the writ of attachment was levied, owned the property, or had an equitable interest therein, it is plain that the property could not be held subject to the writ. It is, then, an important inquiry whether Keeler had title of any character to the property. The facts bearing upon this question are not conflicting, nor is there any substantial dispute in regard to them.

The property in question was owned, originally, by the Western Fertilizer and Chemical Works, a corporation organized under the laws of this State. Prior to 1879 the company made a deed of trust on the property to John B. Bowman, as trustee, to secure the sum of $10,000. This indebtedness was held and owned by the Bank of Commerce of St. Louis, and in April, 1879, $7500 remaining due, the bank demanded the money. Keeler was then secretary of the fertilizer company, and as such he employed Slayback, of the firm of Broadhead, Slayback & Hauessler, to procure from the bank an extension of one year's time in which to pay the indebtedness. The extension was obtained, and thus matters stood until September, 1880, when the bank again insisted on payment. Keeler and Slayback again called on the bank for a further extension, but they were refused, when Hauessler, on September 20, 1880, was induced to go to the bank and purchase the claim on his own account, which he did, and paid his own money therefor. He held the claim until April 9, 1881, when the trustee named in the deed of trust (Mr. Bowman) sold the property in satisfaction of the deed of trust, at public vendue, and at the sale Keeler bid it off for $7500, but not being able to raise the money to pay his bid, Bowman, the trustee, executed the deed, and left it in the hands of Hauessler, to be delivered to Keeler when he should pay the money, as required by the terms of the sale. No

part of the purchase money was ever paid by Keeler.   He agreed with Hauessler to pay the money in sixty days, and in case he failed at the end of the sixty days agreed upon, he was then to make a deed to Hauessler, and thus place the title in him in like manner as if he had been the purchaser at the trustee's sale.   Keeler failing to raise the money to pay his bid, on the first day of July made the deed to Hauessler, as he had agreed to do.   We have made no mention of the deed of trust for $20,000 made by Keeler on the property, upon which he attempted to raise money, as we do not think it has any material bearing on the case.   Keeler was a stockholder in the corporation which owned the property when the deed of trust under which it was subsequently sold was executed, but it is nowhere claimed that he had any title to the property prior to his purchase under the deed of trust, and he certainly acquired no equitable title under his purchase at the trustee's sale.   He bid in the property, but paid no part of the bid, and was never entitled to a deed.   The fact that a deed was given him, in order that he might make a deed to Hauessler to avoid a re-sale under the deed of trust, can not, under the circumstances, be regarded as vesting the title to the property in him.   At all events, receiving a deed in the manner he did, he held as a mere trustee for Hauessler.   The only real interest Keeler had, was his bid, and the deed which he made was merely a transfer of that bid, and as he had transferred his bid before the attachment was levied, he had, at the time of the levy, no interest whatever in the property liable to be reached at the suit of his creditors.

Much stress is placed upon the alleged fact that Hauessler purchased the property for less than its real value.   The sale under which he acquired the title was made under the power contained in the deed of trust.   The property was sold at public vendue, where all had a full opportunity to bid. The sale was conducted in the mode provided by law, and

although the property may not have sold for its full value, that fact did not impair the validity of the sale.

After a careful examination of the entire record, we are satisfied that the judgment of the circuit court is correct, and it will be affirmed.

*Judgment affirmed.*