THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACOB BRAMLETT, Defendant-Appellant.

Fifth District No. 5—83—0091

Opinion filed March 1, 1985.

Randy E. Blue and Patricia M. Sarter, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William A. Schuwerk, State's Attorney, of Chester (Robert J. Biderman

and Kevin T. McClain, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Jacob Bramlett, was charged by information with the offense of murder. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1).) Defendant was found guilty as charged by a jury in the circuit court of Randolph County and was sentenced to a term of imprisonment of 50 to 100 years. On appeal, defendant contends (1) that the circuit court improperly refused to allow a defense witness to testify as to whether that witness would believe the sworn testimony of the State's chief witness and (2) that the prosecutor's comments during closing argument deprived defendant of a fair trial.

Because defendant does not challenge the sufficiency of the evidence against him, a complete recitation of the facts adduced at trial is unnecessary, and we will detail below as necessary only those facts related to the issues raised by defendant. We first address defendant's contention that the circuit court improperly refused to allow a defense witness to testify as to whether that witness would believe the sworn testimony of the State's chief witness.

Defendant's ex-wife, Anna Bramlett, testified that defendant had admitted killing the victim. In order to impeach her testimony, defendant called a witness, Vera Cross, to testify as to the bad general reputation of Ms. Bramlett for truth and veracity in the community. The relevant portions of the report of proceedings containing Mrs. Cross' testimony are as follows:

"Q. [Defense Counsel] Do you know Anna Bramlett.

A. Yes, I know her.

Q. And how long have you known Anna Bramlett?

A. Oh, I'd say about 6 to 7 years.

Q. Are you familiar with Anna Bramlett's reputation for being truthful among the persons and neighbors in Ava?

A. Well, she's not a truthful person.

[State's Attorney]: Objection, Judge.

The Court: All right.

Q. Please answer my question.

The Court: Objection is sustained and the jury is instructed to disregard the last answer of the witness. Proceed.

Q. Are you familiar with Anna Bramlett's reputation for being truthful among the persons, friends, and neighbors she socializes with in Ava?

A. Well, she's—

Q. Are you familiar with that reputation, Mrs. Cross?

A. Yes, I've heard of it, you know, her reputation.

Q. What is her reputation? Would you please tell the jury.

A. Well, I had a conflict with her—

[State's Attorney]: Objection, Judge, of any conversation.

Q. Please, Mrs. Cross, just answer my questions asked. You stated that you are familiar with her reputation for being a truthful person. Would you please tell the jury what her reputation is for being truthful.

A. Well, she don't have a very good reputation for being truthful.

A. Would you believe Anna Bramlett—

[State's Attorney]: Objection, Judge, anything she might believe.

The Court: Objection sustained."

Defense counsel then made the following offer of proof:

"Q. Mrs. Cross, if Anna Bramlett were to testify under oath, would you believe her testimony?

A. No, sir, I wouldn't."

On cross-examination of Mrs. Cross, the following colloquy transpired:

"Q. [State's Attorney] I take it your opinion, in the community you heard conversations about Anna Bramlett. Is that correct?

A. Yes.

Q. Who's the last person that you heard talking about Anna Bramlett?

A. The last person?

Q. Yeah.

A. Juanita Baker.

Q. Juanita Baker, and that was a conversation about her truth and veracity, about her being truthful?

A. Well, she was beat up by her.

Q. Just answer the question.

A. No.

Q. No. Well, that's what we are trying to pin down here. Who is the last person you talked to, or were in the presence of conversation concerning Anna Bramlett's reputation for being truthful? Would you tell the jury who the last person was that you heard discussing her truthfulness.

A. No, I can't remember who it was.

Q. Can't remember who it was?

A. No.

Q. Can you remember when it was?

A. Well, it was right after I was beat up by her.

[State's Attorney]: Judge, I ask that be stricken. That has nothing to do—

A. Oh, I don't remember.

[Defense Counsel]: Your Honor, she is responding to his questions.

The Court: We will leave it stand. Overruled.

Q. [State's Attorney] So you don't remember—

A. No.

Q. Who, and you don't remember when?

A. No because—

Q. Well, you don't?

A. I don't remember, no.

[State's Attorney]: Okay. I have nothing further, Judge."

It is the settled law of Illinois that as part of an impeachment witness' testimony, another witness may testify that such witness has a bad general reputation for truth and veracity. (*Frye v. Bank of Illinois* (1849), 11 Ill. 367.) Furthermore, the impeachment witness may state whether he or she would believe the other witness under oath; however, it must be clear that the belief or disbelief of the other witness if he or she were to testify under oath is based on the impeachment witness' knowledge of the other witness' general reputation for truth and veracity. (*People v. Lehner* (1927), 326 Ill. 216, 157 N.E. 211; *Laclede Bank v. Keeler* (1884), 109 Ill. 385; *Eason v. Chapman* (1858), 21 Ill. 33; *Frye v. Bank of Illinois* (1849), 11 Ill. 367; *Burke v. Zwick* (1939), 299 Ill. App. 558, 20 N.E.2d 912.) In order to satisfy this condition, the interrogatory put to the impeachment witness must require such witness to indicate that his or her opinion is based on his or her knowledge of the other witness' general reputation for truth and veracity. (*People v. Lehner* (1927), 326 Ill. 216, 221, 157 N.E. 211, 214 ("Based on that reputation"); *Laclede Bank v. Keeler* (1884), 109 Ill. 385, 390 ("from such knowledge"); *Frye v. Bank of Illinois* (1849), 11 Ill. 367, 379 ("from that reputation"); *Burke v. Zwick* (1939), 299 Ill. App. 558, 560, 20 N.E.2d 912, 913 ("from that reputation").) Neither the question asked by defense counsel on direct examination nor the question used in defense counsel's offer of proof contains such a limitation. Instead, Mrs. Cross was asked only whether she would believe Ms. Bramlett under oath. Thus, the trial court properly sustained the State's objection to the question.

Defendant's other contention is that the prosecutor's comments during closing argument deprived defendant of a fair trial. In

rebuttal during closing arguments the prosecutor made the following statements:

"[State's Attorney]: *** Now, you know it's an old defense trick to put everybody on trial but the defendant. We are going to put Anna Bramlett on trial. We are going to put [the victim's] father, Ben Skurat, on trial. Those people aren't on trial. There's only one person on trial in this courtroom, and that's the defendant."

Defendant contends that these remarks constitute reversible error.

At the outset we note that defense counsel failed to object to the prosecutor's comments. Any error resulting from the allegedly prejudicial remarks is waived by such failure unless the comments are so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process. (*People v. Owens* (1984), 102 Ill. 2d 88, 104, 464 N.E.2d 261, 268.) With regard to the above-quoted comments, we conclude that not only were neither of the above conditions attained, but that the comments are free of error.

Defendant relies on *People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41, to support his contention. There the court stated: "Unless based on some evidence, statements made in closing arguments by the prosecution which suggest that defense counsel fabricated a defense theory, attempted to free his client through trickery or deception, or suborned perjury are improper." (97 Ill. 2d 487, 497, 455 N.E.2d 41, 45.) The comments of the prosecutor in the case at bar, when taken in context, do not rise to the conduct found impermissible in *Emerson*. In fact, comments similar to those made by the prosecutor in the instant case have been held to be within the bounds of proper argument. See *People v. Griggs* (1977), 51 Ill. App. 3d 224, 226, 366 N.E.2d 581, 583.

For these reasons, we affirm the judgment of the circuit court of Randolph County.

Affirmed.

JONES, P.J., and KARNS, J., concur.