THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT P., Defendant-Appellant.

Third District No. 3—03—0468

Opinion filed January 6, 2005.

McDADE, J., dissenting.

Joseph G. Howard (argued), of Chicago, for appellant.

James Mack, State's Attorney, of Hennepin (Lawrence M. Bauer and Richard T. Leonard (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCHMIDT delivered the opinion of the court:

The defendant was convicted in Putnam County circuit court of aggravated criminal sexual assault, predatory criminal sexual assault of a child and aggravated criminal sexual abuse. He was sentenced to 15 years for each of the assault charges, to run consecutively, and a concurrent 6-year term for the abuse charge. He alleges a number of evidentiary errors and asserts he was denied a fair trial.

## BACKGROUND

The victim, A.P. (born on September 23, 1991), is the adopted child of the defendant and his wife. Prior to being adopted by the P.s in April of 1999, A.P. resided with the F.s for approximately one year. William F. is Mrs. P.'s brother. On March 11, 2002, A.P. reported to her special education teacher, Ms. May, that she had been touched inappropriately by the defendant. On March 12, 2002, she was interviewed by sheriff's deputy John Ellena and Department of Children and Family Services (DCFS) investigator Judy O'Brien. During the interview, A.P. described a long-standing course and pattern of abuse beginning shortly after she was adopted by defendant. O'Brien filed a report with the State indicating that there was credible evidence to support A.P.'s allegations of sexual abuse.

On March 18, 2002, A.P. was interviewed by Kari Koster, the director of Henry County Children's Advocacy Center. In the videotaped interview, Koster posed open-ended questions to A.P. about the abuse. In response, A.P. gave detailed answers describing the abuse to which she had been subjected, including times, dates and details concerning specific incidents of abuse. A.P. also exhibited sexual knowledge that Koster considered advanced for a 10-year-old child. This videotaped interview was played to the jury during Koster's trial testimony despite defendant's objection.

O'Brien and Koster were witnesses at trial and questioned regarding their qualifications. Koster testified that she worked as a "forensic interviewer" who interviewed children to discover the existence of sexual abuse. She stated she had attended several conferences and training classes related to interviewing abused children and that she had interviewed over 300 abused children as a forensic interviewer. O'Brien testified that she had worked for DCFS for 10 years and had interviewed over 1,000 children.

Koster was asked to describe her interviewing technique. She responded that she attempted to elicit from the child a stream-of-consciousness narrative describing the abuse without the use of specific cues or questions. Koster was allowed to comment on whether, in her opinion, A.P.'s accusations were credible. Koster believed they were. O'Brien was also allowed to testify whether she believed A.P. to be credible. She did.

On March 13, March 26, and April 30 of 2002, A.P. was examined by Nancy Auer. Ms. Auer is a nurse at the Pediatric Resource Center. During the initial examination, the nurse noted an abrasion on A.P.'s hymen. Ms. Auer testified this was consistent with sexual abuse. In the second examination, Ms. Auer noted that the abrasion appeared to be healing. In the third examination, Ms. Auer observed continued

healing of the abrasion and also observed several blisters that had erupted in A.P.'s clitoral area and on her labia majora. A culture from the blisters indicated the presence of the herpes II virus, commonly referred to as genital herpes.

A.P.'s medical history indicated that in July of 2000, she was examined by physician assistant Robert Girard, who diagnosed her with herpes and noted that she was suffering from her "primary outbreak." Girard testified that his examination of A.P. revealed that she exhibited symptoms of genital herpes, and therefore, he referred her to Dr. Sean Bailey to perform a blood test. The blood test confirmed the existence of the herpes virus.

Physician assistant Girard further testified that approximately one year prior to diagnosing A.P. with genital herpes, he diagnosed the defendant with genital herpes. Girard ordered no viral test on the defendant but prescribed an antiviral medication. The defendant's herpes infection was confirmed on April 17, 2000, when he was examined by Dr. Constantino Perales. Blood tests performed by Perales confirmed the presence of both the herpes I and herpes II viruses.

Dr. Sean Bailey testified on behalf of defendant. Dr. Bailey testified that he saw A.P. as a patient on August 2, 2000. The purpose of her visit revolved around some lesions in her genital area. Cultures taken from the lesions came back positive for herpes. Dr. Bailey noted that he "talked with [A.P.] *in the presence of her mother*, defendant's wife, and asked her if she'd ever been touched or had anybody done anything with her in her genital area," and "she said no."

Defense counsel then asked Dr. Bailey if herpes can be transmitted nonsexually. Dr. Bailey stated, "There's some speculation that it can. You can get it through kissing of course, and you can—there's some speculation that you can get it through autoinoculation." He continued on direct examination to note that he had "never seen a case" of autoinoculation but, in his opinion, it theoretically could happen. On cross-examination, Dr. Bailey stated that he had never seen any proven case studies noting herpes could be transmitted by autoinoculation. When discussing his failure to report the fact that an eight-year-old patient of his had genital herpes, a sexually transmitted disease, to DCFS, Dr. Bailey stated that in hindsight, "Yeah, I would have reported to DCFS."

A.P. testified that she lived with the P.'s for three to four years. She used to go shopping with her mother and, at times, watch television with the defendant. She stated that the defendant touched parts of her body that he "wasn't supposed to." After claiming that these parts included her "front private," she identified her genital area on a chart as the area which defendant inappropriately touched.

She testified that he touched this area both with his hand and his penis. He would start with his hand while she was either sitting or lying down. The touching took place inside her clothes. The first time the touching took place was within a few weeks after she moved in with the P.'s.

She stated that the defendant told her not to tell anyone about these encounters. When they were over, defendant would go into the bathroom, get cleaned up and tell A.P. to do the same. At times, A.P. would have to wash off a "clear liquid." The defendant would, at times, use Vaseline on himself and A.P.

On cross-examination, A.P. stated that these encounters happened "almost" every day. A.P. stated that on March 11, 2002, she told her special education teacher about the touching. On that day, she mentioned that the last encounter took place on March 10, 2002.

A.P. admitted during her testimony that she lied to her special education teacher on March 11, 2002, when she told the teacher that the defendant inappropriately touched her on March 10, 2002. A.P. also admitted to telling therapist Diane Funk, in 1999, that no one had inappropriately touched her. At trial, A.P. stated that the last time the defendant inappropriately touched her was August of 2001.

The defendant presented several witnesses in an attempt to impeach A.P.'s credibility and bolster his own. Therapist Diane Funk had seen A.P. on two occasions in 1999. Funk testified that A.P.'s mother (defendant's wife) took A.P. to Funk for issues related to lying and masturbating. At the initial appointment, Funk asked A.P. whether she had been touched inappropriately and A.P. responded that she had not.

The defendant also called Gene Randolph as a witness. Randolph was the Putnam County school psychologist. He testified that A.P. had a reputation for lying and that he would not believe her, even if she testified under oath. The defendant's brother-in-law, William F., also testified. He stated that he had been A.P.'s foster father prior to the defendant and stated that A.P. had a reputation for lying. Furthermore, Patrick Lewis, a friend of the defendant's, also testified that A.P. had a reputation for lying.

The defendant testified on his own behalf. He stated that on March 11, 2002, A.P. was upset with him and his wife because they would not allow her to see J.I., a 15-year-old boy. He testified that he and his wife had previously disciplined A.P. for seeing this boy. He denied sexually abusing A.P., but admitted that he had herpes. He stated that he had noticed A.P. had cold sores, which are a form of herpes.

The defendant's wife testified that A.P. had never told her that the defendant was abusive. Furthermore, she had never seen the

defendant act inappropriately. The defendant's wife confirmed that on March 11, 2002, she had an argument with A.P. regarding a 15-year-old boy. A.P. was upset about not being able to see J.I., and the defendant's wife was upset about A.P. stealing and lying. A.P. allegedly told the wife during this argument that the wife "would pay" for not allowing A.P. to see J.I.

Prior to trial, the court ruled on a number of motions *in limine*. One of these included the State's motion to bar the defendant from presenting testimony from his wife and various houseguests suggesting that the defendant did not have the opportunity to commit the crimes for which he was accused. The purpose of this testimony was to show that there were houseguests in the defendant's small house on nights when the abuse allegedly occurred and the defendant would not have had the opportunity to commit the abuse in such a small, full house. The court granted the State's motion, finding that the evidence regarding the houseguests was of "extremely limited" probative value.

The State filed a motion to bar testimony that A.P. had previously alleged that J.I. kissed her and asked her for oral sex. The court granted this motion and barred the evidence pursuant to the Illinois rape shield statute (725 ILCS 5/115—7 (West 2002)).

The State also filed a motion to bar evidence related to A.P.'s mental health treatment. Specifically, the State sought to bar evidence that A.P. told Girard that she had sought treatment for a lying problem in the past and that she often lied without knowing why. This motion also sought to prohibit the defendant's wife from testifying that she took A.P. for mental health treatment because of A.P.'s lying and masturbation. The court granted the State's motion and barred the evidence pursuant to a provision of the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/10(a) (West 2002)).

Finally, the State filed a motion to bar evidence that A.P. falsely accused the defendant of biting her. The court found such evidence not probative and granted the State's motion.

In his appeal, the defendant argues that the evidentiary rulings made below denied him a fair trial by preventing him from fully testing the State's case and presenting his defense. He further alleges that it was error for the court to allow the opinion testimony of Koster and O'Brien and to allow the entry of prior consistent statements of A.P.

## ANALYSIS

The gravamen of defendant's appeal is that the trial court's rulings, when taken as a whole, deprived him of the opportunity to put on a viable defense. Specifically, defendant makes the following claims:

1. The trial court erred when it prohibited defendant's wife from testifying as to the number of people who lived or stayed at defendant's residence;

2. The trial court erred when it precluded evidence that A.P. made accusations of sexual misconduct by J.I.;

3. The trial court erred when it precluded evidence regarding A.P.'s psychological treatment;

4. The trial court erred when it precluded evidence that A.P. had made prior false allegations against defendant claiming that he bit her;

5. The trial court erred by allowing lay witnesses Kari Koster and Judy O'Brien to present expert testimony and comment on A.P.'s credibility;

6. The trial court erred by admitting A.P.'s prior consistent statements;

7. The trial court erred in admitting a videotaped interview of A.P.;

8. Defendant was denied effective assistance of counsel;

9. The evidence admitted at trial failed to prove defendant guilty beyond a reasonable doubt;

10. The trial court abused its discretion in sentencing defendant; and

11. The consecutive sentences imposed by the trial court violated the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

We address defendant's claims of error in the order presented.

## Persons Living With or Staying Overnight at Defendant's Residence

█ Defendant claims that the trial court committed error when it granted the State's motion *in limine*, which sought to bar the defendant's wife from testifying as to who lived or stayed at the defendant's residence. Defendant attempted to introduce this testimony to show that he lacked the opportunity to commit the offenses as accused by A.P. Defendant also attempted to call, as witnesses, these houseguests. The State, while arguing its motion *in limine*, brought to the court's attention that none of these witnesses had been disclosed in pretrial discovery. The court then stated, "If you haven't disclosed those people, obviously they will be barred from testimony. It's not a trial by surprise, but that issue aside, [the State's] motion is granted. It's a red herring as far as the Court is concerned. It has extremely limited and probative value to this case."

The admissibility of evidence is within the sound discretion of the

trial court and its ruling will not be reversed unless there was an abuse of that discretion. *People v. Williams*, 181 Ill. 2d 297, 692 N.E.2d 1109 (1998). Evidence is relevant when it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without that evidence. *People v. Gonzalez*, 142 Ill. 2d 481, 568 N.E.2d 864 (1991).

Defendant seems to suggest that the mere presence of these other individuals made it factually impossible for him to molest his adolescent daughter. Obviously, the acts of which he was accused could have occurred whether he and his daughter were the only people in the house or whether 30 additional people were in the house. Given our standard of review and the fact that reasonable people can differ as to the probative nature of this evidence, we do not believe it was reversible error to exclude this evidence.

## Accusations of Sexual Misconduct by J.I.

■ Defendant claims that the trial court committed reversible error when it precluded evidence that A.P. made accusations of sexual misconduct by J.I.

Specifically, defendant attempted to introduce evidence that J.I. had kissed A.P. and asked her for oral sex in an attempt to show an alternative source of A.P.'s sexual knowledge and to give A.P. a motive to fabricate her story of abuse.

We hold that the trial court did not err in excluding this evidence. The abuse in this case involves sexual penetration. It was well within the trial court's discretion to determine that the proffered evidence would not give A.P. the type of advanced sexual knowledge elicited in reporting the abuse in this case. Whether J.I. had previously kissed A.P. and asked her for oral sex is entirely unrelated to the question of whether the defendant sexually assaulted A.P. None of A.P.'s allegations against the defendant involve kissing or oral sex. Furthermore, there is no evidence that A.P. and J.I. ever engaged in oral sex.

The defendant's theory that this evidence was necessary to show A.P.'s motive for lying also fails. The defendant presented testimony that he and his wife forbade A.P. from seeing J.I., that this made her very angry and she threatened to get back at them for preventing her from seeing this boy. Therefore, the motive evidence was before the jury.

## A.P.'s Psychological Treatment

■ Defendant claims it was error not to allow his wife to testify that she sought mental health treatment for A.P. from Diane Funk due to A.P.'s "lying and her behavior of masturbating." The trial court found that the evidence was not relevant or probative and it was

barred by section 10 of Illinois's Mental Health and Developmental Disability Confidentiality Act (the Act) (740 ILCS 110/10 (West 2002)). Again, we review evidentiary matters such as this under an abuse of discretion standard. While reasonable people could find that the statement from defendant's wife regarding her purpose for taking A.P. to psychological counseling is a statement of fact, it is undoubtedly pregnant with improper lay opinion testimony. Had the defendant's wife been allowed to testify that she sought psychological counseling for A.P.'s lying, she would be implicitly telling the jury that it was her opinion A.P. had a psychological problem. The trial court clearly had the discretion to bar this evidence. Moreover, since the trial court allowed Diane Funk (the therapist to whom defendant's wife took A.P. for treatment) to testify, any error created by keeping out the wife's testimony was harmless. We need not reach the issue of whether the testimony was properly excluded under the Act.

Defendant also attempted to put forth testimony from physician's assistant Robert Girard that A.P. told him she had sought treatment for a lying problem. Defendant claims this communication was not made in the context of mental health treatment and therefore was not covered under the Act. Defendant claims that excluding this evidence improperly infringed upon his right to attack A.P.'s credibility. We disagree.

Physicians (and those therefore employed by physicians) are included in the definition of therapist under section 2 of the Act. 740 ILCS 110/2 (West 2002). Clearly, statements to a physician or physician's employee are suppressible under the Act, even though such a person is not a psychiatrist or psychologist. However, even if we were to find it was error to suppress this statement under the Act, we would find that it was harmless error, as the defendant put on multiple witnesses to testify that A.P. had a reputation for being untruthful. The defense put on therapist Diane Funk and Dr. Sean Bailey, who both testified that A.P. denied on several occasions ever having been touched in her genital area. Also, the defendant, his wife, his brother and A.P.'s school psychologist testified regarding A.P.'s credibility. Contrary to his assertion, defendant was not denied the right to attack A.P.'s credibility. Girard's testimony was cumulative.

### Prior False Allegations Against Defendant Regarding Bite

■ Defendant attempted to introduce evidence that A.P. had previously falsely accused him of biting her. Defendant's purpose is obvious: A.P. lied then and she is lying now. There is nothing in the record to suggest the false biting accusation was sexual in nature. This attempt at impeachment was based on a specific bad act: a previous

specific lie that is not closely related to the crime with which defendant is charged. Our supreme court recently affirmed that specific-act impeachment is prohibited in Illinois. *People v. Santos*, 211 Ill. 2d 395, 813 N.E.2d 159 (2004).

While the *Santos* decision dealt with the admissibility of evidence under the rape shield statute, which is not at issue on this point of law in this case, the court's comments are still relevant here.

> "What defendant wished to do by introducing this evidence was to impeach the victim's credibility with a specific act of untruthfulness. He wished to show the jury that T.K. had lied on one occasion—when she told medical personnel she had not had sexual intercourse with anyone else in the previous 72 hours—in order to support his argument that when she testified in court she was lying about what had occurred between her and the defendant. Far from being constitutionally required, specific-act impeachment is *prohibited* in Illinois." (Emphasis in original.) *Santos*, 211 Ill. 2d at 403-04.

We hold it was not error to exclude evidence of defendant's false accusation regarding the biting incident.

### Kari Koster and Judy O'Brien Testimony

■ Defendant contends that it was error to allow Kari Koster and Judy O'Brien to testify regarding whether they found A.P.'s statements to be credible. We agree. However, we do not believe that this error warrants reversal of defendant's conviction. There was no objection to this testimony at trial and it was not plain error.

Objections not raised in the trial court and in posttrial motions are waived on review. *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988); *People v. Herrett*, 137 Ill. 2d 195, 561 N.E.2d 1 (1990). Our supreme court, in *Enoch*, stated the main purpose for the plain error exception to the waiver doctrine is to correct any serious injustices that have been done to the defendant. Thus, where evidence is closely balanced, a reviewing court may consider errors that have not properly been preserved for review. *Enoch*, 122 Ill. 2d at 199. We do not believe that the admission of the opinion testimony constituted a serious injustice to the defendant nor do we believe that the evidence is closely balanced.

Illinois adheres to the rule that credibility may only be established through reputation evidence. Again, we agree that the admission of the opinion testimony was error. However, this error was technical and insignificant and did not change the outcome of the trial. Illinois remains one of the very few jurisdictions that prohibits opinion testimony on the issue of credibility. The Illinois viewpoint has been harshly criticized by commentators, and it is suggested that opinion

evidence of character based on personal knowledge and belief is superior to reputation evidence, which is the "gathering of others' opinions, rumors and gossip introduced as hearsay in disguise." M. Kadish & J. Elmore, *Illinois' "Grotesquely Outdated" Ban of Opinion Character Evidence in Criminal Cases*, 86 Ill. B.J. 268, 271 (1998). Most jurisdictions follow Rule 405 of the Federal Rules of Evidence, which allows opinion testimony on the issue of character. M. Kadish & J. Elmore, *Illinois' "Grotesquely Outdated" Ban of Opinion Character Evidence in Criminal Cases*, 86 Ill. B.J. 268 (1998). Clearly, any error was nothing more than a technical violation of the Illinois rules of evidence and did not affect any fundamental right of the defendant. As this evidence can be properly admitted down the street at the federal courthouse or across the border in a neighboring state, the defendant's argument, claiming it was a "serious injustice" to admit it in this case, fails.

It is also worth mentioning that defendant, himself, elicited improper opinion testimony regarding A.P.'s truthfulness. Defendant called Gene Randolph, the Putnam County school psychologist. Randolph testified that A.P. had a reputation for lying. He then went on to testify that he "would not believe her even if she testifie[d] under oath." Patrick Lewis also testified that he was familiar with A.P.'s reputation for being untruthful. He, too, testified that he would not believe A.P. if she testified under oath. Lewis's testimony that he would not believe A.P. if she testified under oath was not based on her reputation. During closing argument, defense counsel pointed out to the jury that several witnesses said they would not believe A.P. if she testified under oath and that one of these witnesses was her school psychologist.

Just like most of the other issues with which we deal in this appeal, no objections were made to this testimony or argument. However, this was improper opinion testimony. We are aware that there are cases which hold that once a witness testifies to someone's reputation for truthfulness, that witness can then be asked whether, based on that reputation, he or she would believe the person in question if that person testified under oath. *People v. Lehner*, 326 Ill. 216, 157 N.E.2d 211 (1927); *Laclede Bank v. Keeler*, 109 Ill. 385 (1884); *People v. Bramlett*, 131 Ill. App. 3d 616, 476 N.E.2d 44 (1985). While these cases stand for the aforementioned proposition, they do not discuss the logical inconsistency between the ban on opinion character evidence in Illinois on the one hand and allowing someone who says he is familiar with someone's reputation to testify whether he would believe that person, if the person testified under oath, on the other. It makes absolutely no sense to allow a witness to form an opinion of credibility

based upon reputation and to testify to that opinion, while chanting the mantra that Illinois does not permit opinion testimony on credibility. This is absolutely no different from asking a witness whether he or she thinks a person is credible. There is no difference between saying, "I would not believe this person if she testified under oath," and "In my opinion, this person is a liar."

Moreover, we reject the notion that this error affected the outcome of the trial. The testimony was that Kari Koster and Judy O'Brien found A.P.'s complaints of abuse to be credible. Both of those witnesses were testifying on behalf of the State. Their appearance at trial as State witnesses likely already led the jury to conclude that they found A.P.'s complaints to be credible.

Furthermore, the evidence in this case was not closely balanced. There was more than enough evidence to convict the defendant. The medical testimony at trial stated that A.P.'s primary outbreak of genital herpes occurred in July of 2000, which was after the abuse began and after the defendant was confirmed to be infected by the same virus. At age 10, she described how defendant molested her, ejaculated on her, how he would go to the bathroom to clean himself up and how he would give her a damp cloth and tell her to clean herself up after each such event. She was able to describe the ejaculate. Defendant's argument that this type of sexual knowledge could have been obtained from kissing a 15-year-old boy and his request for oral sex is unconvincing.

As evidence of the defendant's guilt was overwhelming and, having found that no fundamental error occurred, we need not consider alleged trial errors that were waived by failure of the defendant to properly raise the issues below via objection and posttrial motion. It was not plain error for the trial court to allow Koster's and O'Brien's opinion testimony.

### A.P.'s Prior Consistent Statements

■ The defendant claims that the trial court abused its discretion in admitting prior consistent statements made by A.P. which served only to bolster her as a witness before the jury. These statements include the following: Koster's testimony and the videotaped interview of A.P. by Koster; O'Brien's testimony; Nurse Auer's testimony regarding A.P.'s description of the vaginal penetration; and Deputy Ellena's testimony regarding his interview with A.P. Given that A.P. testified regarding the defendant's sexual abuse, defendant claims the additional statements mentioned above were improper consistent statements. Defendant acknowledges that his counsel did not object to the admission of these statements and, as such, he failed to preserve the

issue for review. However, defendant asks this court to review this issue under the plain error doctrine.

We have already stated that the admission of Koster's and O'Brien's testimony was not plain error.

While Deputy Ellena testified as to what A.P. told him, the purpose of this testimony was clearly to explain the steps in his investigation and why he procured a search warrant to the defendant's residence and confiscated such items as Vaseline. Nurse Auer's statements were made during her testimony regarding A.P.'s physical examination in order to explain Nurse Auer's examination findings. We hold neither Deputy Ellena's nor Nurse Auer's statements were improper "consistent statement" testimony. Again, even if the testimony was improperly admitted, it was not plain error.

### Videotaped Interview of A.P.

■ Defendant contends that the trial court abused it discretion in finding that the videotaped interview of A.P. was sufficiently reliable to allow its admittance under section 115—10 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115—10 (West 2002)). We disagree. Section 115—10 of the Code creates an exception to the hearsay rule that allows testimony such as the videotape of A.P.'s statement to be admitted if the court conducts a hearing outside the presence of the jury and finds the statement provided sufficient safeguards of reliability and if A.P. then testifies at the proceeding. The record overwhelmingly indicates that the testimony of Koster, the interviewer on the tape given immediately prior to the section 115—10 hearing, contained enough specific information regarding the time, content and circumstance of the videotaped statement to support the trial court's finding of reliability. Koster gave detailed testimony regarding the content of the interview, interviewing techniques, timing of the interview and interview process. The trial court properly conducted a section 115—10 hearing outside the presence of the jury. Accordingly, we do not believe it was an abuse of discretion to admit the videotaped interview.

### Ineffective Assistance of Counsel

■ Defendant maintains that he was denied effective assistance of counsel during the proceedings below and therefore should be awarded a new trial. Defendant claims trial counsel repeatedly failed to object to improper evidence elicited by the prosecution. Furthermore, defendant claims that counsel failed to disclose witnesses who were living in the same house as the defendant and victim which resulted in the court refusing to consider those witnesses' testimony. Finally, defendant claims that trial counsel failed to adequately preserve the record denying him the opportunity of meaningful appellate review.

To succeed on such a claim, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Our supreme court adopted the *Strickland* standard in *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). In *Albanese*, our supreme court noted that there is "no need to review the individual claims of inadequate representation to determine whether counsel acted within the range of reasonable professional assistance" when a "review of the record demonstrates that even assuming, *arguendo*, that all of the alleged errors constitute substandard representation," the result in the case would not have been altered. *Albanese*, 104 Ill. 2d at 527.

We hold the defendant cannot meet his burden under the second prong of the *Strickland* test. Even assuming, *arguendo*, that all of the alleged errors complained of by the defendant constituted substandard representation, the result of this matter would not have been altered as the evidence contained within the record is so overwhelmingly against the defendant.

## Reasonable Doubt

■ Defendant claims that the evidence failed to establish his guilt of the offense beyond a reasonable doubt. We review such a claim by determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt while considering the evidence in a light most favorable to the prosecution. *People v. Ward*, 154 Ill. 2d 272, 609 N.E.2d 252 (1992).

In light of our finding above that the evidence was overwhelming, we need not go further here.

## Sentencing

■ Defendant contends the trial court abused its discretion in sentencing him by failing to adequately consider his complete lack of criminal history and ignoring the sentencing objective of restoring an offender to useful citizenship. When reviewing such a claim, we must decide whether in fact the trial court exercised its discretion and if discretion was exercised, whether the discretion was abused. *People v. Cox*, 82 Ill. 2d 268, 412 N.E.2d 541 (1980). A sentence that is within the statutory limits will not be disturbed unless it represents an abuse of discretion. *People v. Coleman*, 166 Ill. 2d 247, 652 N.E.2d 322 (1995). It is presumed the judge considered any mitigating evidence while fashioning a sentence. *People v. Anderson*, 225 Ill. App. 3d 636, 587 N.E.2d 1050 (1992). The two felony charges of which the defendant was convicted, predatory criminal sexual assault of a child and aggravated criminal sexual assault, are both Class X felonies, each of

which carries a mandatory minimum sentence of 6 years' imprisonment and a maximum nonextended sentence of up to 30 years' imprisonment. 720 ILCS 5/12—14.1(b), (d) (West 2000); 730 ILCS 5/5—8—1(a)(3) (West 2000). Defendant was also convicted of aggravated criminal sexual abuse, the sentence for which ranges from three to seven years imprisonment. 720 ILCS 5/12—16(g) (West 2000); 730 ILCS 5/5—8—1(a)(5) (West 2000).

During sentencing, the trial court specifically found in mitigation "that the defendant has no history of prior delinquency or criminal activity and has led a law abiding life for a substantial period of time before the commission of the present crime," and that the defendant's medical condition will be aggravated by imprisonment. Moreover, the trial court noted during sentencing that it had considered the presentence report, the testimony in evidence introduced at trial, evidence both in aggravation and mitigation that had been presented to the court, the impact on the State of Illinois from a financial point of view by the defendant's commitment and A.P.'s statement in the case. A review of the presentence report indicates that it discusses both rehabilitative resources and available resources regarding rehabilitation.

The trial court sentenced the defendant to consecutive 15-year sentences for the charges of predatory criminal sexual assault of a child and aggravated criminal sexual assault. The trial court then sentenced the defendant to a six-year concurrent sentence for the charge of aggravated criminal sexual abuse. These sentences are well within the statutorily prescribed ranges mentioned above. We hold the trial court did not abuse its discretion in sentencing the defendant.

### Consecutive Sentences and *Apprendi*

 Finally, the defendant contends that the imposition of consecutive sentences in this matter violates the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Our supreme court held in *People v. Wagener*, 196 Ill. 2d 269, 286, 752 N.E.2d 430, 441 (2001), "*Apprendi* concerns are not implicated by consecutive sentencing." Accordingly, we hold the imposition of consecutive sentences on defendant does not violate *Apprendi*.

### CONCLUSION

For the foregoing reasons, the circuit court of Putnam County is affirmed.

Affirmed.

O'BRIEN, J., concurs.

JUSTICE McDADE, dissenting:

Although the majority finds that a number of evidentiary rulings at the defendant's trial were not sufficient error to warrant a reversal or were not error at all, I find it impossible to reach the same conclusion. Therefore, I must respectfully dissent.

The majority argues that a number of the evidentiary issues are waived because they were not brought in posttrial motion. In general, arguments not raised in a posttrial motion are waived on appellate review. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). Nevertheless, the defendant urges the court to review the issues for plain error. To assert plain error, the defendant must show that the evidence was closely balanced or that the error was so fundamental that the accused was denied a fair trial. *People v. Herrett*, 137 Ill. 2d 195, 210, 561 N.E.2d 1, 8 (1990).

With respect to each of the evidentiary issues, plain error review is appropriate. Each of the alleged evidentiary errors relates to the defendant's ability to impeach A.P.'s credibility, or to the State's attempts to boost her credibility. The State's entire case hinged on the jury believing A.P.'s testimony. Any evidentiary ruling which may have threatened the defendant's right to test A.P.'s credibility could have been seriously prejudicial to the defendant. There was no physical evidence to link the defendant to any crime. The evidence was closely balanced and impeachment testimony could have changed the outcome of the trial. Therefore, I believe the rulings should be reviewed despite the fact that they were not raised in the posttrial motion.

The first error complained of relates to testimony from individuals staying at the defendant's house at the time of the alleged abuse. The defendant sought to have these individuals testify that they did not notice any signs of abuse and that it would have been difficult for the abuse to occur while they were at the house. It is clear that the evidence proposed by the defendant was relevant to the case. Since the State's case was based entirely on the accusations of the victim, testimony that would show that the defendant did not have a ready or easy opportunity to commit specific alleged acts of abuse would possibly impeach A.P.'s credibility and lead to an acquittal. The defendant at least should have been allowed to present the evidence to the jury, so that it could have assessed it for probative value, assigned it an appropriate weight, and evaluated A.P.'s testimony in light of the information.

The defendant also argues it was error for the trial court to prohibit the introduction of evidence that A.P. had made a prior allegation of sexual misconduct against another minor, J.I. The trial court found that the evidence was inadmissible under the rape shield statute.

The statute states that "the prior sexual activity or the reputation of the alleged victim \*\*\* is inadmissible except \*\*\* when constitutionally required to be admitted." 725 ILCS 5/115—7(a) (West 2002). It does not appear to me that the evidence sought by defendant even implicates that statute since what is at issue is J.I.'s alleged sexual advances and not any claimed sexual activity or prior promiscuity on the part of A.P.

Assuming, however, that the statute does apply, the bar is not absolute, as the text of the statute indicates, and a defendant should be allowed to present evidence generally barred under the statute if it is necessary to give effect to the defendant's sixth amendment right to confront his accuser. *People v. Sandoval*, 135 Ill. 2d 159, 191-92, 552 N.E.2d 726, 740 (1990). However, this right to confront is limited in scope. The *Sandoval* court identified three circumstances where an accused may use evidence otherwise barred by statute: (1) when the evidence will show bias, prejudice or motive, (2) when evidence is of other crimes that can be used to impeach a defendant should he choose to testify, and (3) when prior inconsistent statements are used to impeach. *Sandoval*, 135 Ill. 2d at 191, 552 N.E.2d at 740. The court found that the sixth amendment does not require evidence to be used solely to attack the credibility of a witness. *Sandoval*, 135 Ill. 2d at 190, 552 N.E.2d at 740.

The defendant's sixth amendment right is clearly implicated. He sought to show that A.P. had a source—not himself—for her advanced knowledge of sexual terminology, and that she had a motive to lie about the defendant. The defendant attempted to present testimony that J.I., a 15-year-old, had kissed A.P. and asked her to perform oral sex on him. He also tried to admit evidence that she wanted to punish defendant for preventing her from seeing the boy. The testimony is relevant to show an alternative source for the victim's knowledge and to show motive to accuse him falsely. Despite the majority's assertion that they do not find the evidence particularly convincing, it should have been admitted so that *the jury* could have made the determination whether to give credence to the evidence and to the defendant's theory.

Next, the defendant argues that the trial court erred in preventing him from presenting evidence that A.P. was in therapy for a lying problem. The court found the testimony was barred under the Mental Health and Disabilities Confidentiality Act. The Act provides that "in any \*\*\* criminal \*\*\* proceeding \*\*\*, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." 740 ILCS 110/10(a) (West 2002).

The defendant must be provided the opportunity to confront a witness with mental health records if the evidence would be useful in helping the jury to evaluate the truthfulness of the witness's testimony. *People v. Bean*, 137 Ill. 2d 65, 102, 560 N.E.2d 258, 275 (1990). In *Bean*, the court found that generally barred medical records would be admissible if they indicated a bias against the defendant or revealed the witness to be lacking in her ability to perceive, relate, or remember the occurrences about which she testified. *Bean*, 137 Ill. 2d at 102, 560 N.E.2d at 275. Arguably, whether A.P. sought treatment for a lying problem does not implicate these reasons for admitting such records.

However, the information defendant sought to have admitted is not covered by the statute. The statute prevents the disclosure of records or communications, but there is no indication that the defendant sought to admit any medical records. Rather, the evidence was to be testimony from the defendant's wife that she had sought the treatment for A.P.'s lying problem and testimony from Girard stating that A.P. had told him that she had sought treatment for lying. The mother's testimony does not concern either a "record" or "communication" but relates only to the fact that the therapy was sought. It also does not, as the majority asserts, amount to a lay diagnosis of a mental problem. It is nothing more than the statement of the fact that the victim, at the invitation of her frustrated mother, underwent treatment. Girard's testimony, while concerning a communication by A.P., does not concern a communication made in the context of mental health treatment. The court improperly denied the defendant the opportunity to present the evidence.

The evidentiary rulings made by the trial court and complained of by the defendant prevented the defendant from meaningfully confronting the primary witness against him and from adequately presenting a defense. The case hung on the credibility of the alleged victim, and the defendant was unable, due to adverse evidentiary rulings, to contest that credibility. The rulings irreparably prejudiced the defendant and entitle him to a remand for a new trial. For these reasons, I respectfully dissent from the majority's opinion.